IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER LEE SCHWENK | : | |
| and KIETH DRUCK, Individually, and | : | NO.  1:21-CV-02079 |
| on behalf of all other similarly situated, | : | |
| Plaintiffs | : | HON. JENNIFER P. WILSON |
| v. | : | |
| | : | ELECTRONICALLY FILED |
| JOSEPH GARCIA et al | : | |
| Defendants | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS
YORK COUNTY'S, JULIE WHEELER'S, DOUG HOKE'S, RON SMITH'S,
ADAM OGLE'S AND CLAIR DOLL'S 12(b)(6) MOTION TO DISMISS
COUNTS IV AND V OF THE AMENDED COMPLAINT**

**I.      INTRODUCTION**

Defendants, York County, Wheeler, Hoke, Smith, Ogle and Doll have filed a 12(b)(6)

Motion to Dismiss Counts IV and V of the Amended Complaint. Count IV alleges a Substantive

Due Process Clause (hereinafter "SDP") claim against Defendants Wheeler, Hoke, Smith, Ogle

and Doll, and Count V alleges a § 1983 Conspiracy claim against all Defendants. For the

following reasons, Defendant's Motion should be denied.

**II.     STATEMENT OF FACTS IN THE AMENDED COMPLAINT**

    **A.      Factual allegations in support of Count IV (SDP claim)**

Count IV of the Amended Complaint alleges a SDP claim against Defendants Wheeler,

Hoke, Smith, Ogle and Doll (collectively referred to as "York Defendants"). Exhibit "A",

Amended Complaint (hereinafter "AC"). Defendant Wheeler is the York County President

Commissioner, and Defendants Hoke and Smith are also York County Commissioners. Exhibit

"A", AC, ¶¶ 11, 12, 13. Defendant Ogle is the current warden of York County Prison ("YCP"), and Defendant Doll was the warden of YCP until May of 2021. Exhibit "A", AC, ¶¶ 14, 15. Count IV is based upon the aforementioned Defendants decision to contract with Defendants Joseph Garcia (hereinafter "Garcia") and Correctional Special Application Unit, LLC (hereinafter "CSAU1") to provide military-style "special operations" training to YCP staff/guards, and to create a "Special Operations Unit" in the prison. *Id.*, ¶¶ 31, 39.  The original contract between Garcia/ CSAU1 and the York County Defendants was entered into in 2020, and pursuant to that contract Garcia/ CSAU1 were paid $122,000. *Id.*, ¶ 40. The contract was renewed in 2021 for a two-year period, and pursuant to that contract Garcia/ CSAU1 were paid $252,770. *Id.*, ¶ 41.

Count IV alleges that the Due Process Clause "protects against arbitrary actions and decisions taken by executive branch officials" such as the York County Defendants. *Id.*, ¶ 175. Plaintiffs further allege that before contracting with Garcia/ CSAU1 in 2020, and renewing the contract in 2021, the York County Defendants were specifically warned against contracting with Garcia/ CSAU1 "because they had a history and recognized track record of using aggressive and violent tactics during the course of the training that injured pre-trial detainees and convicted prisoners and violated their constitutional rights."  *Id*, ¶ 176. "Despite having prior knowledge of Garcia's and CSAU1's unconstitutional practices and procedures", the York County Defendants "contracted with them to provide training at York County Prison, and vehemently defended and attempted to justify the decision in the press." *Id.*, ¶ 177. Considering their prior knowledge, the York County Defendants "decision to enter into a contract with Garcia and CSAU1 was arbitrary, capricious and conscience shocking in violation of the Due Process Clause of the

Fourteenth Amendment", and they were "deliberately indifferent to the constitutional rights of Plaintiffs".  Exhibit "A", AC, ¶¶ 178, 179.

In support of these allegations, Plaintiffs allege that prior to contracting with Garcia/ CSAU1, it was widely known that Garcia was a fraud, with a criminal record, and that his training methods "aggressively push the application of military-style 'special operations' and militaristic tactics and weapons of war in the corrections setting, including at YCP." *Id.*, ¶¶ 24, 25, 26, 27, 31, 42. These tactics include training techniques that use actual concussion explosives against pre-trial detainees/inmates during the course of training, including at YCP, and also training the prison staff/guards to treat the pre-trial detainees/inmates as enemies and to approach their jobs as combat and to use "eye gouges, strikes to the head, [and] attacks from K9's" when confronting pre-trial detainees/inmates. *Id.*, ¶¶ 35, 36. More specifically, at the time the York County Defendants contracted with Garcia/ CSAU1, they knew that they not only employed and/or encouraged the above techniques/practices/policies during training, but also that they employed/encouraged the techniques/practices employed against the pre-trial detainees/inmates at YCP, which included an execution-style "training exercise" where the Plaintiffs, and other pre-trial detainees/inmates, were forced "to strip naked at gunpoint", and then marched "into the gymnasium, [and] held [ ] against the wall for hours without adequate access to food or medical care, threatened [ ] with imminent death, and lined [ ] up in a mock mass-execution where YCP staff was told to 'lock, load, and take aim' at them." *Id*, ¶¶ 78 thru 87, 106, 107.

As Plaintiffs allege, at the time the York County Defendants contracted with Garcia/ CSAU1 in 2020, and again in 2021, they knew of "Garcia's misrepresentations and deficiencies", and "had been specifically warned against hiring Garcia and CSAU1 by other members of the law enforcement community who had employed and then terminated the

employment of Garcia and CSAU1 based on their use of tactics, policies, and practices 'not appropriate' for the correctional setting." Exhibit "A", AC, ¶¶ 43, 44. Indeed, as Plaintiff alleges, at the time the York County Defendants contracted with Garcia and CSAU1 they knew that Garcia/CSAU1 were the subject of other lawsuits alleging that their training tactics violated the constitutional rights of pre-trial detainees/inmates. *Id.*, 38, 46. As Plaintiff alleges:

> County Defendants knew of and endorsed Garcia and CSAU1's tactics, strategies, and philosophies when they contracted with him to implement policies at CYP and train staff. They could foresee the injuries and damages caused by implementing Garcia and CSAU1's training and policies at YCP. Indeed, Garcia's history of abuses was already publicly known, and he had been sued in the United States District Court for the District of Colorado, at Civil Action No. 20-cv-945, for such abuses.

*Id.*, ¶ 46. Based on the above, at the time the York County Defendants contracted with Garcia/CSAU1 "any competent official would foresee the injuries and damages caused by implementing Garcia and CSAU1's training policies at YCP" and "[t]he County Defendants' decision to implement polices and procedures founded upon Garcia and CSAU1 training caused the constitutional violations in this case." *Id.*, ¶¶ 46, 47.

**B.    Factual allegations in support of Count V (Conspiracy claim)**

Count V alleges a § 1983 Conspiracy claim against all Defendants. Specifically, Plaintiff's allege that Defendants had an agreement to violate the Plaintiffs' constitutional rights, and that in furtherance of that agreement Defendants entered into a contract with Garcia and CSAU1 for training YCP staff/guards, and permitted them to enter the prison on March 21, 2021, May 1, 2021, and June 9, 2021 to violate the Plaintiffs' rights. *Id.*, ¶¶ 182, 183.

In support of this claim, as to Garcia/CSAU1 and the York County Defendants (Wheeler, Hoke, Smith, Ogle and Doll), there was a written agreement between the parties. At the time the York County Defendants contracted with  Garcia/CSAU1 "to train YCP staff, to create policies

for YCP, and to create and implement a YCP Special Operations Unit", they knew of Garcia/CSAU1 established history and record of using intimidation and terror against the inmates as part of the training process, they knew that civil rights lawsuits had been filed against prisons who employed Garcia/CSAU1 for the same services that the York County Defendant's were agreeing to, and they were warned by other law enforcement agencies not to retain the services Garcia/CSAU1. Exhibit "A", AC, ¶¶ 31, 37, 38, 39, 43, 44, 46, 49. Indeed, the hiring of Garcia/CSAU1 was so controversial that it became a point of contention in the local press. *Id.*, ¶¶ 40, 41, 43. As Plaintiffs allege, the "County defendants have stated publicly that they are 'proud' of the aggressive and violent tactics promoted by Garcia and CSAU1", as was evidenced by the fact that they renewed the contract for two more years. *Id.* 41, 43. Accordingly, it can be inferred from the above allegations that when the York County Defendants contracted with Garcia/CSAU1, and then renewed the contract with Garcia/CSAU1, they not only condoned the unconstitutional use of training tactics by Garcia/CSAU1, they were agreeing or consenting to the use of those unconstitutional training tactics on the pre-trial detainees/inmates at YCP, including the Plaintiffs. Restated, it can be inferred from the above allegations that there was a meeting of the minds between Garcia/CSAU1 and the York County Defendants on the use of unconstitutional tactics and force on the pre-trial detainees/inmates at YCP.

Plaintiffs further allege the YCP staff/guards adhere to the unconstitutional tactics taught by Garcia/CSAU1, and employ those unconstitutional tactics on the pre-trial detainees/inmates at YCP, including the Plaintiffs. *Id.*, ¶¶ 57 thru 63, 65, 66. Specifically, Plaintiff alleges:

> The defendants' conduct involves coordination, communication, premeditation, and agreement by YCP staff, County Defendants, other York County supervisors and officials, York County Commissioners, YCPBI, Wheeler, Hoke, Smith, Doll, Ogle, Garcia, CSAU1, and the John and Jane Doe defendants.

*Id.*, ¶ 65. Accordingly, there are also allegations from which it can be inferred that all Defendants had an agreement, and acted in concert to violate the Plaintiffs' constitutional rights.

## III.          STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) only requires that a plaintiff's complaint set forth "a short and plain statement of the claim". Fed.R.C.P. 8(a)(2); *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008) (recognizing in *Twombly* the Supreme Court reaffirmed that Rule 8 only requires a short and plain statement). In elaborating on Rule 8(a), the Supreme Court has held that a complaint is sufficient if it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests". *Conley v. Gibson*, 335 U.S. 41, 47 (1957); *see also Leatherman v. Tarrant County*, 507 U.S. 163 (1993) (no heightened pleading requirement for § 1983 claims); *Phillips*, 515 F.3d at 231. As the Court made clear, because the Rule only requires "notice pleading", the plaintiff does not have to "set out in detail the facts upon which he bases his claim." *Id.* While Rule 8(a) only requires notice pleading and hence does not require the Plaintiff to set forth every fact that supports the claims, recent Supreme Court decisions have made clear that a plaintiff must provide sufficient factual allegations to make out a "plausible claim for relief." *Ashcroft v. Iqbal*, 129 Sup. Ct. 1937, 1950 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Summing up the "Supreme Court's formulation of the pleading standard" in *Twombly*, the Third Circuit held "'stating . . .a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. (cite omitted). This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234. Accordingly, a complaint is sufficient if it

provides fair notice of the Plaintiff's claim and the grounds upon which the claim rests. *Id.* at 233.

Against the liberal pleading requirements of Rule 8(a), Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.C.P. 12(b)(6). Under Rule 12(b)(6), the defendant bears the burden of showing that no claim has been stated. *Piazza v. Major League Baseball*, 831 F.Supp. 420, 424 (E.D. Pa. 1993). In considering whether a defendant has met his burden, a court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). As the Third Circuit has acknowledged, "[t]he issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test". *Lake v. Arnold*, 112 F.3d 682, 688 (3d Cir. 1997) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Moreover, the Third Circuit has consistently held that if a claim is vulnerable to dismissal under Rule 12(b)(6), the plaintiff should be given the opportunity to amend the complaint and cure the deficiency, even if the Plaintiff hasn't moved to amend the complaint. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Indeed, as the court has recognized, under these circumstances, the failure of the district court to allow the amendment is an abuse of discretion:

> [T]his court has consistently held that when an individual has filed a complaint under § 1983 which is dismissable [sic] for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint and denial of an application for leave to amend under these circumstances is an abuse of discretion.

*Darr v. Wolf*, 767 F.2d 79, 81 (3d Cir. 1985); s*ee also Phillips v. County of Allegheny*, 515 F.3d

224, 228 (3rd Cir. 2008)("unless amendment would be futile, the District Court must give a

plaintiff the opportunity to amend the complaint."); *Borelli v. City of Reading,* 532 F.2d 950, 951

n.1 (3d Cir. 1976).

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs have sufficiently plead a SDP claim against the York County Defendants in Count IV of the Amended Complaint.

Defendants contend that Plaintiffs' SDP claim in Count IV of the Amended Complaint

should be dismissed because it is "subsumed by Plaintiffs' claims for excessive force and cruel

and unusual punishment; and 2) Plaintiffs' failure to allege conscience shocking conduct." Defs'

Brief at 3. Plaintiffs will address these arguments seriatim.

### 1.   The SDP claim in Count IV is not subsumed by the SDP excessive force claim in Count I or the Eighth Amendment claim in Count II.

Defendants correctly note that the Amended Complaint has two SDP claims (Counts I

and IV). Defs' Brief at 3-4. However, Defendants fail to grasp that these two SDP claims are

separate and based on distinct legal theories. The SDP claim in Count I is based on the use of

excessive force against pre-trial detainees. This SDP claim focuses on the conduct in the prison,

and is based upon the Supreme Court's decision in *Kingsely v. Hendrickson*, 576 U.S. 389, 396-

397, 402 (2015). Pursuant to *Kingsely*, the standard for excessive force claims by pre-trial

detainees against prisons officials is whether "the force purposely or knowingly used against [the

pre-trial detainee] was objectively reasonable." *Id*. at 396-97. Similar to *Graham v. Connor*, 490

U.S. 386 (1989), the Court identified certain factors to be applied to determine if the force used

"'crosse[s]' the constitutional line." *Id*. at 402.

By contrast, the SDP claim in Count IV focuses not expressly on the events in the prison, but on the decision of the York County Defendants, who are executive branch actors/employees, to contract with Garcia/CSAU1 to train the YCP staff/guards, when they knew that their training techniques employed excessive force against the pre-trial detainees/inmates, violated their constitutional rights, and caused injury. As with all modern SDP claims, the theory of liability in Count IV starts with the Supreme Courts seminal decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), and, contrary to Plaintiffs' excessive force claim in Count I, employs the *Lewis* standard. *See e.g. Kaucher v. County of Bucks*, 455 F.3d 418, 425-431 (3rd Cir. 2006). In *Lewis*, the Supreme Court explained that "the core concept" of due process is "protection against arbitrary action." *Lewis*, 523 U.S. at 845; *Kaucher*, 455 F.3d at 425. The Due Process Clause therefore "was intended to prevent government officials 'from abusing [their] power, or employing it as an instrument of oppression.'" *Lewis*, 532 U.S. at 846 (internal cite omitted). Under this standard, the Due Process Clause "is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Kaucher*, 455 U.S. at 425 (citing *Lewis*, 532 U.S. at 847). Accordingly, Plaintiffs' Amended Complaint alleges a SDP claim for excessive force that employ's an objective reasonableness standard, *Kingsely*, 576 U.S. at 396-397, 402, and a distinct SDP claim based on "the substantive due process right to be from treatment that shocks the conscience". *Eddy v. V.I. Water & Power Authority*, 256 F.3d 204, 212 (3rd Cir. 2001).

Count IV alleges the latter SDP claim, based on the York County Defendants decision to contract with Garcia/CSAU1 to train the YCP staff/guards, knowing that they used unconstitutional tactics, such as forcing pre-trial detainees/inmates to strip naked, handcuffing them, placing them against a wall, and then ordering the prison staff/guards to lock and load and

execute them. This claim is therefore based on the York County Defendants knowledge of Garcia's/CSAU1's unconstitutional tactics, and their decision to contract with them notwithstanding this knowledge, and not on their subsequent unconstitutional treatment of YCP pre-trial detainees/inmates. Under these circumstances, the York County Defendant's decision to contract with Garcia/CSAU1 (twice) certainly was "an abuse of power" and "instrument of oppression". *Lewis*, 532 U.S. at 846. More importantly, because it is based on an entirely different SDP theory, and focuses on a different act, namely contracting with Garcia/CSAU1, contrary to Defendant's contention the SDP claim in Count IV is not "subsumed" by Plaintiffs' excessive force claims in Counts I and II of the Amended Complaint. Concomitantly, under the circumstances of this case, there is not a more specific constitutional provision that covers "the substantive due process right to be from treatment that shocks the conscience". *Eddy*, 256 F.3d at 212. This right is at the very of heart of the SDP clause, and can only be brought as a SDP claim. Defendants are therefore wrong when they contend that Count IV must be dismissed because there is a more specific constitutional provision that applies, or Plaintiffs' claim in Count IV was subsumed by their claims in Counts I and II.[1]

> **2.      Plaintiffs have sufficiently alleged that the York County Defendants conduct in contracting with Garcia/CSAU1 shocks the conscience.**

Defendants contend that the Amended Complaint fails to allege sufficient facts establishing that the York County Defendants conduct "shocks the conscience". Defs' Brief at 6.

---

[1]      It goes without saying that you can have a complaint with a Fourth Amendment claim for illegal entry, a separate Fourth Amendment claim for illegal search, and a third Fourth Amendment claim for excessive force. The Fourth Amendment claims for illegal entry and illegal search apply different legal standards then a Fourth Amendment claim for excessive force, and don't "subsume" the excessive force claim. Defendants have not pointed to one case that suggests that a complaint can't have two SDP claims based on distinct legal theories and legal standards.

Specifically, Defendants argue that Plaintiffs "merely allege that Defendants Wheeler, Hoke, Smith, Ogle and/or Dell entered into a contract with Garcia and CSAU1 despite being warned not to do so." Defs' Brief at 6. Defendants' argument clearly mischaracterizes and minimizes the allegations in the Amended Complaint, omitting a number of facts regarding the York County Defendants prior knowledge of Garcia's/CSAU1's unconstitutional training techniques. Moreover, the Defendants' analysis of the issue is not based on the correct legal standard for "shocks the conscience" in the context of this case, which is "deliberate indifference".

   In a SDP challenge "to an action taken by an executive branch official, 'the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Kaucher*, 455 F.3d at 425 (quoting *Lewis*, 523 U.S. at 847 n.8). However, the "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case". *Id*. at 426 (quoting *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3rd Cir. 1999)). The Third Circuit employs a kind of sliding scale to "evaluate the conditions under which a defendant acted in order to ascertain the relevant standard of culpability." *Id*. "Where a defendant is 'confronted with a hyperpressurized environment such as a high-speed chase . . . it is usually necessary to show that the officer deliberately harmed the victim.'" *Id*. (internal cite omitted). "Where a defendant has 'the luxury of proceeding in a deliberate fashion . . . deliberate indifference may be sufficient to shock the conscience.'" *Id*. (internal cite omitted). There is also a middle ground, "[w]here a defendant has to act with some urgency, but does not have to make split-second decisions--such as when a social worker attempts to remove a child from the parents' custody-- the defendant's actions must "reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Kaucher*, 455 F.3d at 426 (internal cite omitted).

In this case, the decision to contract with Garcia/CSAU1 to provide training at YCP was part of a deliberate process, that presumably was open to the public. Plaintiff specifically plead that the decision was debated and questioned in the local press. Exhibit "A", AC, ¶¶ 40, 41, 43. Accordingly, in choosing to contract with Garcia/CSAU1, the York County Defendants were not confronted with a "hyperpressurized environment" or even a need for "urgency", but instead had the "luxury of proceeding in a deliberate fashion", which means "deliberate indifference" is sufficient to satisfy the "shocks the conscience" standard. *Kaucher*, 455 F.3d at 426. Indeed, "[i]n *Lewis*, the Court identified deliberate indifference as the appropriate standard for holding prison officials liable for their role in creating unsafe conditions of confinement." *Id.*, 426 n.3. Under the deliberate indifference standard, the Plaintiff's allegations must show that in entering the contract with Garcia/CSAU1 to provide training, the York County Defendants knew that that they were exposing pre-trial detainees/inmates at YCP to a 'substantial risk of serious harm". *Framer v. Brennan*, 511 U.S. 825, 834 (1994). Specifically, Plaintiff must allege facts establishing that by hiring Garcia/CSAU1 to provide training at YCP, the York County Defendants created (1) conditions of confinement that posed a substantial risk of harm; (2) they acted with deliberate indifference to that substantial risk of serious harm; and (3) that the decision to contract with Garcia/CSAU1 to do the training was the cause of harm to the Plaintiffs. *Id.*

At the pleading stage, the Amended Complaint certainly alleges sufficient facts to state a plausible deliberate indifference claim against the York County Defendants based on their contracting with Garcia/CSAU1 to provide training at YCP. Contrary to Defendants' characterization of the Amended Complaint, Plaintiff alleges more than that the Defendants were "warned" not to retain Garcia/CSAU1. Before contracting with Garcia/CSAU1, the York County

Defendants knew that Garcia/CSAU1 had a history and recognized track record of using aggressive and violent tactics during the course of the training that injured pre-trial detainees and convicted prisoners and violated their constitutional rights."  Exhibit "A", AC, ¶ 176. Specifically, they knew Garcia/CSAU1 "aggressively push[ed] the application of military-style 'special operations' and militaristic tactics and weapons of war in the corrections setting, including at YCP." *Id.*, ¶¶ 24, 25, 26, 27, 31, 42. This included using concussion grenades on prisoners, and also teaching YCP staff/guards to use "eye gouges, strikes to the head, [and] attacks from K9's" when confronting pre-trial detainees/inmates. *Id.*, ¶¶ 35, 36. More specifically, the York County Defendants knew that in training exercises Garcia/CSAU1 employed the tactics used on the Plaintiffs in this case, which included forcing them to strip naked, handcuffing them, forcing them to stand against a wall, and then ordering the guards to lock and load, point their weapons at them, and act as if they are going execute them. *Id*, ¶¶ 78 thru 87, 106, 107.  They also knew that civil rights lawsuits had been brought against other governmental entities/prisons that had contracted with Garcia/CSAU1 to provide the same training that YCP was getting. These allegations are more than enough to establish that in contracting with Garcia/CSAU1 to provide training at YCP, the York County Defendants created an unconstitutional condition of confinement and were deliberately indifferent to a substantial risk of serious harm to the pre-trial detainees/inmates at YCP. *Id.*, ¶ 38.

This conclusion is supported by case law. Relying upon the Third Circuit's decision in *Black v. Stephens*, 662 F.2d 181, 188-89 (3rd Cir. 1981), the Eighth Circuit Court of Appeals held that "where a public official has threatened to employ deadly force as a means of [ ] discipline", it satisfies the SDP clauses "shocks-the-conscience standard." *Hawkins v. Holloway*, 316 F.3d 777, 786-87 (8th Cir. 2003). As the Court held, "we agree with Black's holding that an official's

threat to employ deadly force for no legitimate reason rises to a substantive due process violation." *Hawkins*, 316 F.3d at 787. In this case, the Amended Complaint is replete with allegations supporting the inference that the York County Defendants knew before contracting with Garcia/CSAU1 that their training exercises required YCP staff/guards to threaten pre-trial detainees/inmates with deadly force, such as exploding concussion grenades, firing shotguns, and staging a mass execution that included aiming real guns at the handcuffed pre-trial detainees/inmates. These training exercises were an abuse of power, and a means of oppressing the pre-trial detainee/inmates, and "elevat[ed] their conduct to the arbitrary and conscience shocking behavior prohibited by substantive due process." *Id*. at 787. The York County Defendants contracted with Garcia/CSAU1 for the very purpose of using/employing the training tactics that they knew violated the pre-trial detainee/inmates constitutional rights and exposed them to a substantial risk of harm. Accordingly, but for the hiring of Garcia/CSAU1 by the York County Defendants, the Plaintiffs would not have been exposed to the unconstitutional training tactics employed by Garcia/CSAU1. It follows that in contracting with Garcia/CSAU1, the York County Defendants were deliberately indifferent to a substantial risk of harm to the Plaintiffs, and that under these circumstances their decision to contract with Garcia/CSAU1 was arbitrary, capricious and "shocks the conscience". For the above stated reasons, Defendants 12(b)(6) Motion to Dismiss Count IV of the Amended Complaint should be denied.

**B.    Plaintiffs' have sufficiently alleged a § 1983 claim for conspiracy in Count V.**

Defendants contend that the Amended Complaint fails to allege any facts that "indicate that there was a 'meeting of the minds' to deprive Plaintiffs of a constitutional right" and therefore Plaintiffs failed to allege a § 1983 claim for conspiracy. Defs' Brief at 8. To state a § 1983 claim for conspiracy, "a plaintiff must show that two or more conspirators reached an

agreement to deprive him or her of a constitutional right under color of law." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3rd Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3rd Cir. 2003); *see also Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3rd Cir. 2008) ("To constitute a conspiracy, there must be a 'meeting of the minds.'"). Accordingly, "[t]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Coulter v. Ramsden*, 510 F. App'x 100, 103 (3rd Cir. 2013).

In this case, the Amended Complaint alleges numerous "facts from which a conspiratorial agreement can be inferred." *Id*. Contrary to Defendant's contention, the Amended Complaint alleges an express meeting of the minds to violate the Plaintiffs constitutional rights, and the dates the conspiracy was entered into. Specifically, the Amended Complaint alleges that in November of 2020 the York County Defendants contracted with Garcia/CSAU1 to provide special training that employed unconstitutional, militaristic tactics on the pre-trial detainees/inmates, and that they renewed that contract for two more years in 2021. Exhibit "A", AC, ¶¶ 39, 40, 41. As discussed above, at the time that the York County Defendants entered into the contract with Garcia/CSAU1, they "knew of and endorsed Garcia and CSAU1's tactics, strategies, and philosophies when the contracted with [them] to implement policies at CYP (sic) and train staff." *Id.*, ¶ 46.

At the time the contracts between the York County Defendants and Garcia/CSAU1 were entered into, the York County Defendants were well aware that as part of the training, the pre-trial detainees/inmates at YCP would be exposed to unconstitutional practices, such as having concussion grenades discharged in their presence, shotguns discharged in their presence, and being forced to stand naked, while handcuffed, as YCP staff/guards pointed real weapons at them

15

in a mock execution. Exhibit "A", AC, ¶¶ 24, 25, 26, 27, 31, 35, 36, 42, 78 thru 87, 106, 107.

The York County Defendant were expressly agreeing to the kind of unconstitutional conduct that

forms the basis of the Amended Complaint when they contracted with Garcia/CSAU1, and

therefore it goes without saying that there was an express agreement between the York County

Defendants and Garcia/CSAU1 to violate the pre-trial detainees/inmates, including the Plaintiffs,

constitutional rights. Plaintiffs have therefore sufficiently plead a conspiracy claim against the

York County Defendants and Garcia/CSAU1.

Plaintiffs further allege the YCP staff/guards adhere to the unconstitutional tactics taught

by Garcia/CSAU1, and employ those unconstitutional tactics on the pre-trial detainees/inmates at

YCP, including the Plaintiffs. *Id.*, ¶¶ 57 thru 63, 65, 66. Specifically, Plaintiff alleges:

> The defendants' conduct involves coordination, communication, premeditation, and agreement by YCP staff, County Defendants, other York County supervisors and officials, York County Commissioners, YCPBI, Wheeler, Hoke, Smith, Doll, Ogle, Garcia, CSAU1, and the John and Jane Doe defendants.

*Id.*, ¶ 65. Accordingly, Plaintiffs also sufficiently alleged a conspiracy claim against the

John/Jane Doe Defendants.

## V.    CONCLUSION

For the above stated reasons, Defendants' 12(b)(6) Motion to Dismiss Counts IV and V

of the Amended Complaint should be denied.

RESPECTFULLY SUBMITTED,


BY:_s/Alan Denenberg_____
ALAN DENENBERG, ESQUIRE
ATTORNEY FOR PLAINTIFFS

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER LEE SCHWENK** | : | |
| **and KIETH DRUCK, Individually, and** | : | **NO.  1:21-CV-02079** |
| **on behalf of all other similarly situated,** | : | |
| **Plaintiffs** | : | **HON. JENNIFER P. WILSON** |
| **v.** | : | |
| | : | **ELECTRONICALLY FILED** |
| **JOSEPH GARCIA et al** | : | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

**CERTIFICATE OF SERVICE**

I, Alan Denenberg, Esquire, hereby certify that on April 7, 2022, a true and correct copy of Plaintiffs' Response to Defendants 12(b)(6) Motion to Dismiss Counts IV and V of the Amended Complaint was served electronically via the Courts' electronic filing system on all counsel of record.

Date:  April 7, 2022

_s/ Alan Denenberg_____
ALAN DENENBERG, ESQUIRE
ATTORNEY FOR PLAINTIFFS