# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTOPHER LEE SCHWENK
and KIETH DRUCK ,
Individually, and on Behalf of All
Others Similarly Situated**

**PLAINTIFFS**

**v.**

**JOSEPH GARCIA,**

**CORRECTIONS SPECIAL
APPLICATION UNIT, LLC,**

**YORK COUNTY, PENNSYLVANIA
d/b/a YORK COUNTY PRISON,**

**JULIE WHEELER,**

**DOUG HOKE,**

**RON SMITH,**

**ADAM OGLE,**

**CLAIR DOLL,**

**and JOHN DOE and JANE DOE,
CORRECTION OFFICERS,**

**DEFENDANTS**

C.A. No.  1:21-cv-02079

**JURY TRIAL DEMANDED**

*Electronically Filed Document*

## CLASS ACTION
## AMENDED COMPLAINT



## INTRODUCTION

1.     This is a class action for injunctive and declaratory relief and for damages for the named plaintiffs and the class they represent (hereinafter "Plaintiffs and class members").

2.     The plaintiffs and plaintiff class have suffered pervasive, chronic, and unconstitutional conditions of confinement at the York County Prison. Without judicial intervention, these conditions will continue.

3.     This suit is the result of York County and its officials hiring Joseph Garcia and Corrections Special Application Unit, LLC to develop policies for York County Prison and to train staff members of York County Prison. This caused a toxic culture where excessive and unjustified terror and violence is perpetrated with impunity by the defendants against the Plaintiffs and class members. The uses of violence and militaristic tactics and weapons specified in this Complaint are dangerous, rampant, merciless, unrelenting, unjustified, immoral, and unconstitutional.

## JURISDICTION

4.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 1983 and 1988, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

5.    The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**PARTIES**

6.    Plaintiff, Christopher Lee Schwenk ("Schwenk"), an adult citizen of the Commonwealth of Pennsylvania, was at all material times a pre-trial detainee, who was being housed at the York County Prison. As a pre-trial detainee, Schwenk's constitutional claims are governed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Kingsely v.* Hendrickson, 576 U.S. 389, 397, 402 (2015). Schwenk sues on behalf of himself and all other similarly situated pre-trial detainees for damages that resulted from the practices and policies of the defendants, and sues for injunctive and declaratory relief on behalf of himself and all other similarly situated pre-trial detainees who currently are or will in the future be subject to the unconstitutional conditions of confinement ("class members").

7.    Plaintiff, Kieth Druck ("Druck"), an adult citizen of the Commonwealth of Pennsylvania, was at all material times a convicted prisoner, who was being housed at the York County Prison. As a convicted prisoner, Druck's constitutional claims are governed by the Eighth Amendment of the United States Constitution. *Whitley v. Albers*, 475 U.S. 312, 318 (1986). Druck sues on behalf of himself and all other similarly situated convicted prisoners for damages that resulted

from the practices and policies of the defendants, and sues for injunctive and declaratory relief on behalf of himself and all other similarly situated convicted prisoners who currently are or will in the future be subject to the unconstitutional conditions of confinement ("class members").

8.    Defendant Joseph Garcia ("Garcia") is the owner and founder of Corrections Special Application Unit. He is sued individually.

9.    Defendant Corrections Special Application Unit, LLC ("CSAU1") is a business founded and owned by Garcia with dubious and obscure origins. The business has operated under various names, including C-SOG, C-SAU, CSAU1. It has also operated under a shell company called Ops Groups, LLC and Legalinc Corporate Services Inc with a principal place of business registered at 1591 Savannah Highway, Suite 201, Charleston, South Carolina, 29407. Currently, CSAU1 advertises at www.csau1.com and claims to have offices in Washington D.C., Greenville, South Carolina, and Sacramento, California. The Complaint will identify the business as "CSAU1," the most recent iteration of Garcia's business, but includes any/all parents, predecessors, or affiliates of CSAU1 including C-SAU and C-SOG.

10.    Defendant York County is a political subdivision of the Commonwealth of Pennsylvania and operates and funds the York County Prison ("YCP").

11.     Defendant Julie Wheeler ("Wheeler") is the York County President Commissioner. She is sued individually and in her official capacity. Wheeler, along with Commissioner's Hoke and Smith, and Warden Ogle and/or Doll, collectively had final decision making authority over the decision to contract with Defendant CSAU1 and to violate the Plaintiffs' constitutional rights.

12.     Defendant Doug Hoke ("Hoke") is the York County Commissioner and the president of the York County Prison Board of Inspectors ("YCPBI"). He is sued individually and in his official capacity.

13.     Defendant Ron Smith ("Smith") is a York County Commissioner. He is sued individually and in his official capacity.

14.     Defendant Adam Ogle ("Ogle") is the Warden of YCP. He is sued individually and in his official capacity.

15.     Defendant Clair Doll ("Doll") was, Warden of YCP until May 2021. He is now the executive director of York County Human Services. He is sued individually and in his official capacity.

16.     Defendants John Doe and Jane Doe, whose names are currently unknown, are officials and officers of the YCP who personally subjected the named plaintiffs and plaintiff class to the conditions alleged in this Complaint.

17.     At all relevant times, all defendants acted under color of state law.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of himself and all persons who were incarcerated or detained at YCP since the York County, YCP, Wheeler, Hoke, Smith, Ogle, and Doll contracted with Garcia and CSAU1 to train YCP staff, to create policies for YCP, and to create and implement a YCP Special Operations Unit (a/k/a Red Team a/k/a C-SAU1 Team a/k/a SOG) ("C-SAU1 Team").

19.     The members of the class are so numerous that joinder of all members is impracticable. By way of example, the following are all putative class members:

> Louis Reyes Aleman, Ronald Boyd, Samee Childs, Michael Clark, Wyatt Dettinger, Daiquan Dickerson, Frank Dortch, Syied Drummond, Michael Failla, Christopher Gibson, Richard Heikes, Jose Ruiz Hernandez, David Vincent Heim, Tay-Yaugnn Chandler-Hope, Ronald Hyser, Bryan Manso Jimenez, Michael Edwin Johnson Jr., Scott Jones, Michael Keys Jr., Gregory Kinard, Scott Klunk, Jacob Largent, David Leatherman, Shaker Luzinger, Hector Morales, Bryan Morris, Fabian Morris, Jonathan Murray, Christopher Nduku, Charles Eugene Nolden, Nelson Ortiz, Alexander Pabon, Jr., Christian Piette, Isaias Ramos, Luis Rodriguez, Jr., Zachary Blake Schalizki, David Seecharran, Wayne Smith, Jr., Zukael Stephens, Justin Tayman, James Thompson, Richard Tyler, Isaiah Valenti, Brian Pena Villanueva, Julian Gallegos Villanueva, De'Sean Williams, Gordon Wilson, and Joshua Zink

Although the exact number of class members is unknown to the Plaintiff at the present time, it can be ascertained from records maintained by York County and/or by searching the criminal dockets on the Unified Judicial System Web Portal, which identifies the amount of bail, whether and where someone is incarcerated on a

secured bail, the length of criminal sentences, and whether criminal sentences involve state or county incarceration.

20.    Plaintiff will fairly and adequately represent and protect the interests of the members of the class. Plaintiff's attorneys have approximately fifty (50) years of combined experiencing litigating various matters in the United States District Court for the Middle District of Pennsylvania, the Eastern District of Pennsylvania, the Western District of Pennsylvania, and the Third Circuit. Plaintiff's attorneys focus on Civil Rights Litigation pursuant to 42 U.S.C. § 1983 and will vigorously pursue this matter on behalf of the Plaintiff and all class members.

21.    Plaintiff's claims are typical of the claims of the other class members because they all were subject to the repeated and random abuse of inmates by Garcia, CSAU1, and Johns/Janes Doe correctional officer employees at YCP. This abuse included excessive uses of force, threats, and violations of constitutional rights.

22.    Defendants have acted or failed to act on grounds that apply to the class. Final injunctive and/or declaratory relief is appropriate respecting the class as a whole.

23.    Common questions of law and fact exist to as to all members of the class and predominate over any questions affecting solely individual members of the class. Among the questions of law and fact common to the members of the class are the following:

a.    Whether the policies, customs, and/or practices of York County and YCP in using excessive and unjustified force against inmates and pretrial detainees to intimidate, humiliate, punish, and harass is in violation of the Eighth and Fourteenth Amendments guarantees against cruel and unusual punishment and excessive force;

b.    Whether the policies, customs, and/or practices of York County and YCP to permit mental and physical harassment and torture of inmates and pretrial detainees as part of "training" correctional employees without permitting those inmates or pretrial detainees access to medical care constitutes a violation of the Eighth and Fourteenth Amendments;

c.    Whether the policies, customs, and/or practices of York County and YCP to subject inmates and pretrial detainees to physical and/or emotional abuse wholly unrelated to legitimate governmental purposes constitutes a violation of the Fourteenth Amendment's guarantee of substantive due process;

d.    Whether the defendants engaged in a common purpose/civil conspiracy to subject inmates and pretrial detainees at YCP to excessive force, unlawful restraints, physical assaults, sexual degradation, threats, humiliation, and terror;

e.    Whether York County is liable under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), for violating the constitutional rights of inmates and pretrial detainees of YCP when they endorsed the practices of and thus had an unwritten policy at the prison whereby Garcia's and CSAU1's unconstitutional abuse of inmates and detainees is acceptable.

f.    Whether the continuing violation of the class members' rights and interests may be remedied through the issuance of an injunctive and/or declaratory relief against Defendants.

## FACTUAL ALLEGATIONS

## JOSEPH GARCIA AND CSAU1

24.     Garcia is a business-owner who peddles his services to law enforcement and corrections facilities throughout the country. He has been called the "Bernie Madoff of correctional consultants" and otherwise criticized throughout the country for his fraudulent, abusive, immoral, and illegal practices.

25.     Upon information and belief, Garcia is a fraud who falsifies and exaggerates his work history. See Dylan Dylan Segelbaum, "Here's what we know about C-SAU 'Senior Team Leader' Joseph Garcia's employment background," YORK       DAILY       RECORD,       Sept.       15,       2021,       at https://www.ydr.com/story/news/watchdog/2021/09/15/c-sau-senior-team-leader-joseph-garcia-employment-history-what-we-know/8315657002/.

26.     Upon information and belief, Garcia touts himself as a military and corrections expert with a celebrated and longstanding career in law enforcement. In reality, Garcia is reported to have been discharged from the Air Force after pleading guilty to conspiracy to commit grievous bodily harm in plot to beat up a man, and he served 2 ½ years in a British prison for his conduct. See Dylan Segelbaum, "York County Prison's controversial trainer was sentenced to 2 ½ years in British prison," YORK       DAILY       RECORD,       Aug.       30,       2021,       at https://www.ydr.com/story/news/watchdog/2021/08/30/c-sau-senior-team-leader-

joseph-garcia-sentenced-british-prison-stars-and-stripes-report/8203200002/;

Dylan Segelbaum, "C-SAU 'Senior Team Leader' Joseph Garcia repeatedly dodges

questions about military service," York Daily Recor, Sep. 3, 2021, at

https://www.ydr.com/story/news/watchdog/2021/09/03/c-sau-senior-team-leader-

joseph-garcia-dodges-questions-military-service-allegheny-county-

meeting/5694981001/.

27.    Garcia claims to have been in business for twenty years. This is a claim

that is impossible to verify, because Garcia has repeatedly founded and dissolved

the same business plan under different names. Most recently, this business is titled

the Corrections Special Application Unit ("CSAU1") that advertises at

www.csau1.com.

28.    CSAU1 touts itself as "a global provider and specialist of High-Risk

Corrections Special Operations and mitigation." It describes itself as "not only the

largest but most experienced full-service government provider of Corrections

Special Operations Services" with "two decades of proven operational success

stories that range from providing full-service training, consulting, and real-world

response." See www.csau1.com/about.

29.    CSAU1's website is filled with pictures and videos of corrections

officers brandishing weapons of war and dressed in military fatigues. The following

pictures illustrate.



Figure 1 taken from www.csau1.com



Figure 2 taken from www.csau1.com



Figure 3 taken from www.csau1.com/about/



Figure 4 taken from www.csau1.com/red-team-inop4-movement-ops/

30.    Garcia and CSAU1 seek out lucrative private contracts, such as their contract with York County.

31.     Garcia and CSAU1 aggressively push the application of military-style "special operations" and militaristic tactics and weapons of war in the corrections setting, including at YCP. They promote the use of weapons and combat tactics like those used against the Plaintiffs and class members. The following pictures, taken as screenshots from a promotional video for Garcia and CSAU1 (operating under the name US C SOG) illustrates.



Figure 5 taken from "US C SOG In Motion" at
https://www.youtube.com/watch?v=Wd_euwCLjpA



Figure 6 taken from "US C SOG In Motion" at
https://www.youtube.com/watch?v=Wd_euwCLjpA



Figure 7 taken from "US C SOG In Motion" at
https://www.youtube.com/watch?v=Wd_euwCLjpA



Figure 8 taken from "US C SOG In Motion" at
https://www.youtube.com/watch?v=Wd_euwCLjpA



Figure 9 taken from "US C SOG In Motion" at
https://www.youtube.com/watch?v=Wd_euwCLjpA

32.    Garcia and CSAU1 glorify the use of explosives at YCP and have used concussion explosives used them against the Plaintiffs and class members.

33.    Garcia and CSAU1 purposely keep their unlawful tactics and strategies, including training and polices. When questioned, they falsely claim that their practices are "classified" and "confidential" when, in fact, they are matters of grave public concern. See Dylan Segelbaum, "York NAACP asks commissioners to table vote on 2-year, $252,770 contract with jail trainer," YORK DAILY RECORD, Oct. 20, 2021 at https://www.ydr.com/story/news/watchdog/2021/10/20/york-naacp-asks-york-county-commissioners-table-expected-vote-contact-extension-c-sau/8536274002/.

34.    Aspects of Garcia's training have been leaked to various media outlets. For instance, according to jail staff in New York who participated in trainings conducted by Defendant Garcia, his motto during training is: "Break the jaw and walk away." See Rich Calder and Yoav Gonen, "Rikers trains guards in prohibited eye gouges, elbow strikes," NY POST, Aug. 22, 2016, at https://nypost.com/2016/08/22/rikers-trains-guards-in-prohibited-eye-gouges-elbow-strikes/.

35.    CSAU1's written policies falsely claim claims that CSAU 1 teaches de-escalation techniques. But in fact CSAU1's training focuses on combat techniques including eye gouges, strikes to the head, attacks from K9s, and other excessive and

justified uses of force. Reports from participants in CSAU1's training confirm that Garcia promotes military combat techniques in the jail setting.

36.    According to his own public statements, Garcia trains jail staff, including YCP staff, to consider inmates and pretrial detainees as "enemies" and to approach their job as one in "combat." Garcia uses terminology like "going to battle with" inmates and pretrial detainees and being warlike, ingraining violence in his employees and those of the correctional facilities he has been retained by, including YCP.

37.    Garcia and CSAU1 not only encourage, but welcome violence. For example, they urge jail staff to wear army green uniforms so that they can more easily see blood when engaging in so-called "combat operations" against inmates and detainees. The military-style clothing of Garcia and CSAU1's trainees is purposeful. It is designed to intimidate and terrorize inmates and pretrial detainees under the constant threat of brutality and violence.

38.    The excessive force taught by Garcia and CSAU1 to correctional institutions have been the subject of civil litigation, including but not limited to Civil Action No. 20-cv-945 in the United States District Court for the District of Colorado. This suit, involving an assault on an individual and the firing of concussion explosions in his vicinity, was recently settled for $325,000 with an agreement by the County to never employ Garcia or CSAU1 again. See Dylan Segelbaum,

"Colorado county settles civil rights lawsuit that repeatedly mentioned C-SAU for $325,000," YORK DAILY RECORD, Nov. 10, 2021, at https://www.ydr.com/story/news/watchdog/2021/11/10/weld-county-colorado-civil-right-lawsuit-settlement-c-sau/6360152001/.

## YORK COUNTY'S CONTRACT WITH GARCIA AND CSAU1

39.    Defendants York County, Wheeler, Hoke, Smith, Doll, and Ogle (collectively, "County Defendants") entered into a contract with Garcia and CSAU1 to train YCP staff, to create policies for YCP, and to create and implement a YCP Special Operations Unit (a/k/a Red Team a/k/a C-SAU1 Team a/k/a SOG) ("C-SAU1 Team").

40.    According to publicly available records, County Defendants paid Garcia and CSAU1 $122,000 in November 2020. See Julia Agos, "Controversial security tactics at York County Prison raise questions about outside contractor," WITF, May 20, 2021, at https://www.witf.org/2021/05/20/controversial-security-tactics-at-york-county-prison-raise-questions-about-outside-contractor/.

41.    County Defendants recently renewed their contract with Garcia and CSAU1 in 2021 that will pay Garcia and CSAU1 $252,770. See Dylan Segelbaum, "York County commissioners approve minor changes to 2-year, $252,770 contract with C-SAU," YORK DAILY RECORD, Nov. 17, 2021, at https://www.ydr.com/story/news/watchdog/2021/11/17/york-county-

commissioners-approve-two-year-contract-extension-changes-c-sau/8642124002/;

Dylan Segelbaum, "York County commissioners approve 2-7ear, $252,770 contract with controversial jail trainer," YORK DAILY RECORD, Oct. 20, 2021, at https://www.ydr.com/story/news/watchdog/2021/10/20/york-county-commissioners-approve-two-year-contract-extension-c-sau/8526675002/.

42.    Upon information and belief, Garcia is a fraud who lacks certifications, licenses, and expertise. He is not qualified to train YCP staff or implement policies for YCP.

43.    Upon information and belief, County Defendants knew of Garcia's misrepresentations and deficiencies. A cursory check of his background would put a competent prison official on notice of Garcia's checkered history. County Defendants have repeatedly acknowledged hearing of Garcia and CSAU1's troubling past, yet have defended York County's contract with Garcia and CSAU1. See Matt Enright, "A 'slippery slope': What does the future hold for York County's prison contract?," YORK DISPATCH, Nov. 1, 2021, at https://www.yorkdispatch.com/story/news/local/2021/11/01/slippery-slope-what-does-future-hold-york-countys-prison-contract/6196192001/; Dylan Segelbaum, "York County Prison trainer C-SAU: Commissioner Ron Smith unleashes tirade in defense," YORK DAILY RECORD, Sept. 1, 2021, at https://www.ydr.com/story/news/watchdog/2021/09/01/york-county-

commissioner-ron-smith-rants-in-defense-of-controversial-contractor-c-sau-joseph-garcia/5683022001/; Dylan Segelbaum, "York County Prison moves closer to 2-year contract with controversial jail contractor," YORK DAILY RECORD, Aug. 12, 2021, at https://www.ydr.com/story/news/local/2021/08/12/york-county-prison-takes-step-toward-extending-contract-with-controversial-contractor-c-sau/8094981002/. County defendants have stated publicly that they are "proud" of the aggressive and violent tactics promoted by Garcia and CSAU1. See Dylan Segelbaum, "'Ridiculous': York County Prison's controversial trainer pepper-sprayed deputies in S.C.," YORK DAILY RECORD, Aug. 18, 2021, at https://www.ydr.com/story/news/watchdog/2021/08/18/york-county-prison-controversial-contractor-pepper-sprayed-deputies-in-south-carolina-videos-show/8162195002/.

44.    Indeed, the County Defendants were specifically warned against hiring Garcia and CSAU1 by other members of the law enforcement community who had employed and then terminated the employment of Garcia and CSAU1 based on their use of tactics, policies, and practices "not appropriate" for the correctional setting. See Dylan Segelbaum, "S.C. detention director says she warned York County Prison about controversial trainer C-SAU," YORK DAILY RECORD, Nov. 30, 2021, at https://www.ydr.com/story/news/watchdog/2021/11/30/sheriff-al-cannon-detention-center-director-warned-york-county-prison-c-sau/8676473002/.

45. Moreover, any reasonable official would know that Garcia is unqualified to train staff or implement policies for a jail, that his training and tactics are unconstitutional, and that his policies will foreseeably result in violations of civil rights of inmates such as those described in this Complaint.

46. County Defendants knew of and endorsed Garcia and CSAU1's tactics, strategies, and philosophies when they contracted with him to implement policies at CYP and train staff. They could foresee the injuries and damages caused by implementing Garcia and CSAU1's training and policies at YCP. Indeed, Garcia's history of abuses was already publicly known, and he had been sued in the United States District Court for the District of Colorado, at Civil Action No. 20-cv-945, for such abuses.

47. Moreover, any competent official would foresee the injuries and damages caused by implementing Garcia and CSAU1's training and policies at YCP.

48. The County Defendants' decision to implement policies and procedures founded upon Garcia and CSAU1 training caused the constitutional violations in this case.

49. County Defendants are liable for their own policy decisions which independently caused the named plaintiffs' and plaintiff class's injuries as described in this Complaint.

50.    County Defendants are directly liable for the unconstitutional policies and training involving Garcia and CSAU1, because the County Defendants' obligation to ensure the safety and protection of incarcerated persons is nondelegable.

51.    As the warden of YCP, Ogle is responsible for the protection and safety of YCP inmates and detainees. He is also responsible for the training of YCP staff.

52.    As the County Commissioner and President of the YCPBI, Hoke is responsible for the safety and protection of YCP inmates and detainees. He is also responsible for the policies of YCP and training of YCP staff.

53.    As County President Commissioner, Wheeler is responsible for the safety and protection of YCP inmates and detainees. She is also responsible for the policies of YCP and training of YCP staff.

54.    As County Commissioner, Smith is responsible for the safety and protection of YCP inmates and detainees. He is also responsible for the policies of YCP and training of YCP staff.

55.    County Defendants have a non-delegable duty to ensure they implement constitutional training of and policies for YCP staff. They knowingly and purposely failed to do so through their own conduct and decision-making, as well as through hiring, retaining, and working with Garcia and CSAU1.

56.    County Defendants training and policies are contrary to appropriate policies and procedures for a jail, because they jeopardize both prison security and prisoner safety. They violate best practices and the United States Constitution. These policies and training have led directly to civil rights violations at other jails and prisons, as well as YCP.

57.    Through the County Defendants' own policies, and by hiring Garcia and CSAU1, County Defendants authorized a military combat approach to pretrial detention and county incarceration. They have trained YCP staff to be quick to use unreasonable, unconstitutional, and excessive violence and force.

58.    Through the County Defendants' own policies, and by hiring Garcia and CSAU1, County Defendants authorized YCP staff to use weapons unnecessarily, unreasonably, and excessively. Specifically, weaponry endorsed and approved by the County Defendants, Garcia, and CSAU1 include without limitation Kel-Tec Shotguns and concussion explosion rounds, hard rubber bullets capable of causing permanent injury, concussion grenades and explosives, sniper-style laser sights, and a variety of other military weapons.

59.    Through the County Defendants' own policies, and by hiring Garcia and CSAU1, County Defendants have authorized and endorsed training of YCP staff to use physical violence, "combat" style tactics, sexual degradation of prisoners, physical assaults, physical deprivations, and the infliction of mental and emotional

distress. See Matt Enright, "'I own you': The brutal history of York County's prison contractor," YORK DISPATCH, Aug. 31, 2021, at https://www.yorkdispatch.com/story/news/local/2021/08/31/i-own-you-brutal-history-york-countys-prison-contractor/8246287002/.

60.     Through the County Defendants' own policies, and by hiring Garcia and CSAU1, County Defendants have authorized and implemented a customary practice that amounts to a *de facto* official policy of YCP correctional staff to constantly terrorize Plaintiffs and class members. YCP inmates are guarded at gunpoint with C-SAU1 Team patrolling with pointed shotguns and military armor.

61.     The glorification of violence, explosives, weaponry, and the use of military-style tactics in the jail setting is utilized by County Defendants as a recruiting tool and training device for YCP correctional employees.

62.     County Defendants continue to endorse the customs, practices, training, and policies implemented and inspired by Garcia and CSAU1.

## CONSTITUTIONAL VIOLATIONS OF THE PLAINTIFF CLASS

63.     Since November 2020, County Defendants, Garcia, and CSAU1 have implemented policies and training that turned YCP into a militarized environment in which Plaintiffs and class members have been terrorized, brutalized, and constitutionally violated.

64.    A pattern and practice of excessive and unconstitutional force exists at YCP that amounts to a *de facto* official policy sanctioned by the County Defendants. These customs and unwritten policies have caused violations against Plaintiffs and class members. These policies and customs of excessive force affect all YCP staff, not just the C-SAU1 Team (although members of the C-SAU1 Team are often participants in the violence and violations described herein).

65.    The defendants' conduct involves coordination, communication, premeditation, and agreement by YCP staff, County Defendants, other York County supervisors and officials, York County Commissioners, YCPBI, Wheeler, Hoke, Smith, Doll, Ogle, Garcia, CSAU1, and the John and Jane Doe defendants.

66.    Multiple individuals, including inmates, former inmates and individuals who visit the jail report conduct by the YCP staff consistent with what is described in this Complaint. It is well-known and observed by anyone who spends time at YCP that the conduct against the named plaintiffs and plaintiff class is typical of the YCP staff. Indeed, this conduct has been reported by the local newspaper numerous times and precipitated an inquiry by the Pennsylvania Prison Project.

67.    Pre-discovery investigation has uncovered numerous instances of unjustified violence by the York County Prison staff on Plaintiffs and class members, which taken together amounts to standard practice and procedure at the York County Prison.

68.    Several specific incidents will be described herein, but this suit is not limited to these enumerated examples. These examples include an incident on or about March 31, 2021 where an execution-style "training exercise" was performed, terrorizing and degrading Plaintiffs and class members.

69.    Additionally, on or about May 1, 2021, YCP staff were involved in a shooting that occurred within a pod at YCP, terrorizing and injuring Plaintiffs and class members.

70.    A similar shooting occurred on June 9, 2021. At that time, YCP staff were involved in a shooting that occurred within a pod at YCP, terrorizing and injuring Plaintiffs and class members.

71.    Numerous, repeated, and unrelenting other incidents of excessive violence, subjugation, and terror have occurred.

72.    On or about March 31, 2021, YCP staff initiated a "shake down" of one of the YCP pods. This "shake down" was veiled as a training exercise that resulted in sadistic and unconstitutional treatment of many of the Plaintiffs and class members.

73.    Beginning at or about 4:30 am, members of the C-SAU1 Team and Garcia awoke inmates by barging in the pod and removing inmates from their cells at gunpoint. As the C-SAU1 Team entered the pod, they had their guns drawn and began yelling instructions to the Plaintiffs and class members to stay in their bunks.

74.    The inmates were forced to strip naked in front of each other and the officers.

75.    The naked inmates were told that if they made any movements without prior approval, they would be shot using deadly force and/or have a K9 "officer" sent to bite them mercilessly.

76.    The inmates were then ordered to get dressed. Each inmate was pulled out of their cell and handcuffed.

77.    The inmates were lined up and marched to the prison gymnasium where they were forced to sit, handcuffed facing a wall for over five (5) hours.

78.    The inmates did nothing to warrant this treatment and/or punishment. They were not being disciplined for any offense.

79.    During that period, the inmates were denied food, use of the bathroom, and/or the practical ability to eat food since they remained handcuffed.

80.    The inmates were also denied routine medical care, including access to prescribed medications.

81.    Several inmates began having mental health emergencies, including panic attacks, due to the severity of the treatment by Garcia and the members of the C-SAU1 Team.

82.    Defendants repeatedly threatened the Plaintiffs and class members by warning them that they would be bitten by a dog or shot with deadly force if they

moved so much as an inch. Garcia instructed YCP staff to shoot anyone who moved out of line.

83.    At one point, a nurse came in because several Plaintiffs and class members were in mental health crises due to the inhumane treatment by the defendants. She told the defendants that their treatment of Plaintiffs and class members was causing medical distress, but she was ignored and dismissed.

84.    Defendants continued to threaten to kill prisoners if any of them moved even so much as an inch. Defendants told prisoners that, if challenged, Defendants would fabricate a story that the prisoners hold a staff member hostage. The planned fabrication was simply a ploy to use excessive and unconstitutional force. It demonstrates how ready, willing, and able the defendants were to kill the plaintiffs.

85.    At one point, Garcia and the C-SAU1 Team told the prisoners to stand up facing the wall with their hands on the wall in an "execution-style" line.

86.    While the prisoners were facing the wall with their hands up, Garcia instructed the C-SAU1 Team to "lock, load, and take aim" at them. The C-SAU1 Team pointed their guns at the back of their heads, and the defendants imitated a mass-execution of the prisoners.

87.    After over five (5) hours of mental torture by being held captive in the gymnasium at gunpoint and under the threat of death, prisoners were taken back to

the pod where they were again forced to strip naked at gunpoint in front of the officers and each other.

88.    This training was conducted at the instruction of and with the knowledge of the County Defendants

89.    Garcia used this "training exercise" to promote himself and CSAU1 and the glorify their illegal and immoral conduct as "beautiful" and faith-based. See Dylan Segelbaum, "York County Prison contractor used prisoners in provocative promo videos, email shows," YORK DAILY RECORD, June 8, 2021, at https://www.ydr.com/story/news/watchdog/2021/06/08/york-county-prison-contractor-used-film-prisoners-promotional-videos-emails-appear-to-confirm/7603807002/. This time-stamped photograph from March 31, 2021 at 08:07:47, posted by Garcia on his Facebook page, illustrates.



Figure 10 taken from Segelbaum, YORK DAILY RECORD, June 8, 2021, supra

Page 30 of 68

90. There was no justification or legitimate law enforcement purpose behind this training exercise. It was intended to instill a culture of violent domination into the Defendant Corrections Officers and to instill a culture of violent subjugation into the plaintiff class members.

91. This incident was also reported in the local newspaper. See Dylan Segelbaum, "York County pays $120K for controversial 'Navy SEALS'-like jail trainer. Controversy follows," YORK DAILY RECORD, May 17, 2021, at https://www.ydr.com/story/news/watchdog/2021/05/17/york-county-prison-c-sau-corrections-special-operations-contractor-joseph-garcia-tactical-weapons/5077223001/.

92. Defendants made no effort at remediation.

93. On or about May 1, 2021, an unjustified, unprovoked, dangerous, and illegal shooting occurred in C-Pod whereby members of the C-SAU1 Team shot rubber bullets at members of the plaintiff class members.

94. Earlier in the day on May 1st, there had been some sort of argument between inmates on C-Pod. The argument was resolved without incident.

95. Long after the argument was resolved, members of the C-SAU1 Team stormed C-Pod.

96. Without warning, provocation, or cause, a C-SAU1 Team member shot at the residents of C-Pod.

97. Multiple members of the plaintiff class filed grievances through the appropriate channels to report the abuse. Their grievances went ignored, discounted, and trivialized.

98. Defendants made no effort at remediation.

99. On or about June 9, 2021, C-SAU1 Team members burst into a housing pod and fired a shotgun at inmates without warning or provocation.

100. A corrections officer has mistakenly called for backup, and the C-SAU1 Team responded with reckless haste. Their violent response was immediate and occurred without any professional assessment of potential threats. Indeed, no threat existed.

101. The shotgun fire hit at least one member of the Plaintiffs and class members.

102. Multiple members of the Plaintiffs and class members filed grievances about the June 9, 2021 shooting. Those grievances went ignored and unaddressed.

103. Defendants made no effort at remediation.

104. There have been multiple other incidents of violence, excessive force, and illegal use of force and weapons inside YCP by the defendants. Other accounts of abuse include but are not limited to: forcing the prisoners to strip naked at gunpoint without warning or provocation, shooting rubber/cork bullets at prisoners,

abusing inmates verbally in order to instill terror and subjugation, and the use of a K9 as an agent of terror.

105.    The uses of force against the named Plaintiffs and class members was directly caused by not only the official training, policies, and procedures of the County Defendants, but further by the unwritten yet routine practices and customs of excessive force against the plaintiff class members. These include without limitation the unlawful use of shotguns (including brandishing, menacing, pointing, and firing weapons without justification); unlawful and excessive use of physical force; the unlawful and excessive use of concussion explosives to terrorize and harm inmates and pretrial detainees at YCP; and the shocking and unreasonable militarization of the jail setting for the specific purpose of terrorizing and brutalizing inmates and pretrial detainees.

## ALLEGATIONS SPECIFIC TO INDIVIDUAL NAMED PLAINTIFFS

106.    Plaintiff Christopher Lee Schwenk was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Schwenk was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Schwenk was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food

or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them. Swenck was also threatened by C-SAU1 Team members and present when the C-SAU1 Team fired off a shotgun without warning or provocation in a housing pod.

107.    Plaintiff Keith Druck was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Druck was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Druck was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them. During the execution-style "training exercise," Druck had a major anxiety attack that required medical intervention, yet the instructions from the nursing staff to the C-SAU unit and other correction officers about the danger they were putting the plaintiffs in went unaddressed. Druck was also present when C-SAU officers came into his pod and fired a round from their shotgun at the inmates for no reason and without provocation. Druck made at least one grievance about the abuses he suffered by the C-SAU unit, and those grievances went unaddressed, because the administrative and

county-level defendants support the C-SAU unit's treatment of Druck and the plaintiff class members.

## ALLEGATIONS SPECIFIC TO PUTATIVE CLASS MEMBERS

108.   Putative class member Louis Reyes Aleman was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Aleman was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Aleman was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

109.   Putative class member Ronald Boyd was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Boyd was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Boyd was present during the May 1, 2021 shooting at the C-Pod when a C-SAU1 Team member shot a shotgun in his direction without warning, provocation, or cause.

110.   Putative class member Samee Childs was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County.

Throughout his detention, Childs was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Childs was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

111.    Putative class member Michael Clark was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Clark was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Clark was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them. Clark filed at least two grievances about the abuses he suffered by the C-SAU unit, and those grievances went unaddressed, because the administrative and county-level defendants support the C-SAU unit's mistreatment and abuse of Clark and the plaintiff class members.

112.    Putative class member Wyatt Dettinger was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Dettinger was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Detting was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them. During the execution-style "training exercise," Dettinger was denied medically necessary medication.

113.    Putative class member Daiquan Dickerson was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Dickerson was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, on June 9, 2021, C-SAU units came into Dickerson's pod and fired a shotgun at the inmates after another correction officer made a mistaken call for backup. Dickerson witnessed and experienced the rampant and random abuse of inmates by the correctional special officers of CSAU1 and YCP correctional officers. Dickerson filed at least one grievance about the abuses he suffered by the C-SAU unit, and those grievances

went unaddressed, because the administrative and county defendants support the C-SAU unit's treatment of Dickerson and the plaintiff class members.

114. Putative class member Syied Drummond was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Drummond was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, on June 9, 2021, a C-SAU unit member came into Drummond's pod and shot at the inmates without cause and without provocation. A piece of a rubber bullet hit Drummond in the eye. Drummond did not receive constitutional care, and when he tried to keep the piece of the rubber bullet as evidence of the abuse he suffered, he was not permitted to do so and his grievances went unaddressed.

115. Putative class member Michael Failla was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Failla was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Failla was present during the May 1, 2021 shooting at the C-Pod when a C-SAU member shot a shotgun in his direction without warning, provocation, or cause. A piece of the cork bullet hit Failla. Since that incident, Failla has been diagnosed with PTSD.

116. Putative class member Christopher Gibson was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County.

Throughout his detention, Gibson was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Gibson was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them. Gibson made at least two grievances about the abuse he suffered by the C-SAU unit, and those grievances went unaddressed, because the administrative and county-level defendants support the C-SAU unit's treatment of Gibson and the plaintiff class members.

117.    Putative class member Christopher Heikes was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Heikes was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Heikes was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

118.  Putative class member Jose Ruiz Hernandez was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Hernandez was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Hernandez was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

119.  Putative class member David Vincent Heim was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Heim was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Heim was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

120.    Putative class member Tay-Yaugnn Chandler-Hope was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Chandler-Hope was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Chandler-Hope was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them. Chandler-Hope was also present during the May 1, 2021 shooting at the C-Pod when a C-SAU member shot a shotgun in his direction without warning, provocation, or cause.

121.    Putative class member Ronald Hyser was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Hyser was subjected to excessive uses of force, threats, and violations of his constitutional rights. At various times during his incarceration, Hyser was held at gunpoint and threatened with deadly force and forced to strip naked in front of other inmates without provocation or cause. Hyser experienced the repeated and routine constitutional violations when C-SAU unit members would hold inmates in Hyser's pod at gunpoint without warning, provocation, or cause.

122.    Putative class member Bryan Manso Jimenez was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Jimenez was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Jimenez was present during the May 1, 2021 shooting at the C-Pod when a C-SAU member shot a shotgun in his direction without warning, provocation, or cause. The next day, Jimenez was standing at the tablet station when another C-SAU unit member pulled him into the hallway and held him at gunpoint, threatening him with deadly force because Jimenez "looked at" the C-SAU officer.

123.    Putative class member Michael Edwin Johnson, Jr. was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Johnson was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Johnson was present during the May 1, 2021 shooting at the C-Pod when a C-SAU member shot a shotgun in his direction without warning, provocation, or cause.

124.    Putative class member Scott Jones was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Jones was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Jones was present during the

May 1, 2021 shooting at the C-Pod when a C-SAU member shot a shotgun in his direction without warning, provocation, or cause.

125.    Putative class member Michael Keys, Jr. was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Keys was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, on April 22, 2021 C-SAU unit officers came into Plainitff Keys's pod for no apparent reason, started yelling and screaming at the inmates, and held them at gunpoint without warning, provocation, or cause. The inmates were forced to stand up and communally strip naked and sit with their hands on their head for hours. Keys and his pod-mates were ordered into the prison day room and threatened with deadly force and the "activation" of a K9 officer to bite them.

126.    Putative class member Gregory Kinard was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Keys was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Keys was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food

or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

127.    Putative class member Scott Klunk was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Klunk was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Klunk was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

128.    Putative class member Jacob Largent was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Largent was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Largent was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

129.   Putative class member David Leatherman was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Leatherman was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Leatherman was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

130.   Putative class member Shaker Luzinger was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Luzinger was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Luzinger was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

131.    Putative class member Hector Morales was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Morales was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Morales was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

132.    Putative class member Bryan Morris was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, B. Morris was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, B. Morris was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

133. Putative class member Fabian Morris was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, F. Morris was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, on June 9, 2021, members of the C-SAU unit came into Morris's pod and fired a gun without warning, provocation, or cause.

134. Putative class member Jonathan Murray was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Murray was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Murray was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

135. Putative class member Christopher Nduku was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Nduku was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Nduku was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia

forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

136.    Putative class member Charles Eugene Nolden was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Nolden was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, on June 9, 2021, C-SAU units came into Dickerson's pod and fired a shotgun at the inmates after another correction officer made a mistaken call for backup. Nolden witnessed and experienced the rampant and random abuse of inmates by the correctional special officers of CSAU1 and YCP correctional officers.

137.    Putative class member Nelson Ortiz was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Ortiz was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Ortiz was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food

or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

138. Putative class member Alexander Pabon Jr. was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Pabon was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Pabon was present during the May 1, 2021 shooting at the C-Pod when a C-SAU member shot a shotgun in his direction without warning, provocation, or cause. Pabon sought mental health treatment at YCP for the trauma caused by the defendants.

139. Putative class member Christian Piette was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Piette was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Piette was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

140. Putative class member Isaias Ramos was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County.

Throughout his detention, Ramos was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Ramos was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

141.   Putative class member Luis Rodriguez Jr. was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Rodriguez was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Rodriguez was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

142.   Putative class member Zachary Blake Schalizki was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Schalizki was subjected to excessive uses of force, threats,

and violations of his constitutional rights. For example, Schalizki was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

143.   Putative class member David Seecharran was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Seecharran was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Seecharran was repeatedly sexually degraded by members of the C-SAU1 Team. The C-SAU1 Team forced him to strip naked at gunpoint in front of other inmates and guards, shined a flashlight on his genitals, and made an example out of him in front of other inmates by forcing him to display his genitals and anus. This was done without provocation or cause. Seecharran was also present as C-SAU1 Team members patrolled the halls in full army tactical gear with shotguns drawn at the prisoners.

144.   Putative class member Wayne Smith Jr. was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Smith was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, on June 9, 2021, C-SAU

units came into Dickerson's pod and fired a shotgun at the inmates after another correction officer made a mistaken call for backup. Smith witnessed and experienced the rampant and random abuse of inmates by the correctional special officers of CSAU1 and YCP correctional officers.

145.   Putative class member Zukael Stephens was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Stephens was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Stephens was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

146.   Putative class member Justin Tayman was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Tayman was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, in April 2021, the C-SAU1 Team members came into Tayman's housing pod, ostensibly to perform a search. Instead of searching, the C-SAU1 Team members rushed into the pod, guns drawn, without provocation or cause. They forced Tayman and his fellow pod-mates to get

on their stomachs where they lay for hour. Tayman was then forced to strip naked in front of other inmates and guards, show his penis and testicles to the C-SAU1 Team. The defendants involved in this incident yelled sexually degrading statements at Tayman. The present defendants also rifled through Taymans's things without provocation or cause, destroying his personal property. Tayman was also present on July 20, 2021 when C-SAU Members came into his pod and fired a shotgun without provocation or cause at the prisoners.

147. Putative class member James Thompson was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Thompson was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Thompson was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

148. Putative class member Richard Tyler was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Tyler was subjected to excessive uses of force, threats,

and violations of his constitutional rights. For example, on June 9, 2021, C-SAU units came into Dickerson's pod and fired a shotgun at the inmates after another correction officer made a mistaken call for backup. Tyler witnessed and experienced the rampant and random abuse of inmates by the correctional special officers of CSAU1 and YCP correctional officers.

149.   Putative class member Isaiah Valenti was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Valenti was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, on June 9, 2021, C-SAU units came into Dickerson's pod and fired a shotgun at the inmates after another correction officer made a mistaken call for backup. Valenti witnessed and experienced the rampant and random abuse of inmates by the correctional special officers of CSAU1 and YCP correctional officers. Valenti was hit in his right eye as a result of the C-SAU1 Team members reckless and unlawful conduct.

150.   Putative class member Brian Pena Villanueva was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, B. Villanueva was subjected to excessive uses of force, threats, and violations of his constitutional rights.

151.   Putative class member Julian Gallegos Villanueva was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York

County. Throughout his detention, J. Villanueva was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, J. Villanueva was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them.

152.   Putative class member De'Sean Williams was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Williams was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Williams was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them. During that time, Williams was denied life-sustaining medication. Williams filed several grievances about the conduct of the C-SAU1 Team that went ignored.

153.    Putative class member Gordon E. Wilson was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Wilson was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Wilson was present during the May 1, 2021 shooting at the C-Pod when a C-SAU member shot a shotgun in his direction without warning, provocation, or cause. Wilson now suffers hearing loss in his left ear as well as anxiety and insomnia. Wilson attempted to receive treatment as a result of the trauma he suffered but has been denied.

154.    Putative class member Joshua Zink was being held at YCP during Garcia's and CSAU1's tenure as a trainer and contractor with York County. Throughout his detention, Zink was subjected to excessive uses of force, threats, and violations of his constitutional rights. For example, Zink was involved in the March 31, 2021 execution-style "training exercise" where YCP staff and Garcia forced Plaintiffs and class members to strip naked at gunpoint, marched them into the gymnasium, held them against the wall for hours without adequate access to food or medical care, threatened them with imminent death, and lined them up in a mock mass-execution where YCP staff was told to "lock, load, and take aim" at them. During the incident, Zink suffered a panic attack. During the panic attack, Garcia ripped Zink off the floor by his handcuffs and told him that if he continued to move or express his fear, he would be shot in the back of the head.

## COUNT I
## SCHWENK v. ALL DEFENDANTS
## VIOLATION OF DUE PROCESS CLAUSE OF
## THE FOURTEENTH AMENDMENT
## (Excessive Force)

155.   Plaintiffs incorporate by reference all other paragraphs and sections of this Complaint as if fully set forth herein.

156.   At all times material hereto, Schwenk was a pre-trial detainee.

157.   At all times material hereto, Defendants, acting under color of state law, intended to use the force described in more detail above against Schwenk, and all other similarly situated pre-trial detainees.

158.   At all times material hereto, Defendants, acting under color of state law, acted purposefully or knowingly in using the force against Schwenk, and all other similarly situated pre-trial detainees.

159.   At all times material hereto, the force purposefully and knowingly used by Defendants on Schwenk, and all other similarly situated pre-trial detainees, was unreasonable under the circumstances in violation of the rights protected by the Due Process Clause of the Fourth Amendment.

160.   As the direct and proximate cause of the unreasonable/excessive force used by Defendants, Schwenk, and all other similarly situated pre-trial detainees, suffered the injuries described above.

161.   As the direct and proximate cause of the unreasonable/excessive force used by Defendants, Schwenk, and all other similarly situated pre-trial detainees, are entitled to damages and declaratory and injunctive relief.

### COUNT II
### DRUCK v ALL DEFENDANTS
### VIOLATION OF THE EIGHTH AMENDMENT
### (Excessive Force/Cruel and Unusual Punishment)

162.   Plaintiffs incorporate by reference all other paragraphs and sections of this Complaint as if fully set forth herein.

163.   At all times material hereto, Druck was a convicted prisoner.

164.   At all times material hereto, Defendants, acting under color of state law, intentionally used the force described above against Druck, and all other similarly situated convicted prisoners, maliciously and for the purpose of causing harm, rather than in a good faith effort to maintain and restore discipline.

165.   Defendants intentional and malicious use of force caused harm and injury to Druck, and all other similarly situated convicted prisoners.

166.   Defendants malicious and sadistic use of force on Druck, and all other similarly situated convicted prisoners, constituted cruel and unusual punishment in violation of the rights protected by the Eighth Amendment to the United States Constitution.

167.   As the direct and proximate cause of the malicious/sadistic force used by Defendants, Druck, and all other similarly situated pre-trial detainees, suffered the injuries described above.

168.   As the direct and proximate cause of the malicious/sadistic force used by Defendants, Druck, and all other similarly situated pre-trial detainees, are entitled to damages and declaratory and injunctive relief.

## COUNT III
## PLAINTIFFS v. GARCIA and JOHNS/JANES DOE
## VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS
### (Failure to Intervene/Bystander Liability)

169.   Plaintiffs incorporate by reference all other paragraphs and sections of this Complaint as if fully set forth herein.

170.   At all times material hereto, Defendants Garcia and John/Jane Does had a constitutional duty to intervene to prevent the use of excessive and/or malicious/sadistic force against pre-trial detainees and convicted prisoners.

171.   Defendants Garcia and/or and John/Jane Does were present and in close proximity to the excessive and/or malicious/sadistic use of force on March 21, 2021, May 1, 2021, and June 9, 2021, with a reasonable opportunity to intervene.

172.   Despite being in close proximity with a reasonable opportunity to intervene, Defendants Garcia and/or and John/Jane Does failed to intervene to stop the unconstitutional use of force on March 21, 2021, May 1, 2021, and June 9, 2021

in violation of the Plaintiffs' rights under Due Process Clause of the Fourteenth Amendment and the Eighth Amendment of the United States Constitution.

173.   As the direct and proximate cause of Defendants Garcia and/or and John/Jane Does failure to intervene, the Plaintiffs suffered the injuries described above.

**COUNT IV**
**PLAINTIFFS v. WHEELER, HOKE, SMITH, OGLE AND/OR DOLL**
**VIOLATION OF FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS**

174.   Plaintiffs incorporate by reference all other paragraphs and sections of this Complaint as if fully set forth herein.

175.   The Due Process Clause of the Fourteenth Amendment protects against arbitrary actions and decisions taken by an executive branch official, including Defendants Wheeler, Hoke, Smith, Ogle and/or Doll.

176.   Defendants Wheeler, Hoke, Smith, Ogle and/or Doll were specifically warned against contracting with Garcia and CSAU1 to provide training in the York County Prison because they had a history and recognized track record of using aggressive and violent tactics during the course of the training that injured pre-trial detainees and convicted prisoners and violated their constitutional rights.

177.   Despite having prior knowledge of Garcia's and CSAU1's unconstitutional practices and procedures, Defendants Wheeler, Hoke, Smith, Ogle

and/or Doll contracted with them to provide training at York County Prison, and vehemently defended and attempted to justify their decision in the press.

178.   In agreeing to contract with Garcia and CSAU1, despite their knowledge, Defendants Wheeler, Hoke, Smith, Ogle and/or Doll were deliberately indifferent to the constitutional rights of Plaintiffs, and all similarly situated pre-trial detainees and convicted prisoners.

179.   Defendants Wheeler, Hoke, Smith, Ogle and/or Doll decision to enter into a contract with Garcia and CSAU1 was arbitrary, capricious and conscience shocking in violation of the Due Process Clause of the Fourteenth Amendment.

180.   As the direct and proximate cause of Defendants Wheeler's, Hoke's, Smith's, Ogle's and/or Doll's conscience shocking decision to contract with Garcia and CSAU1, the Plaintiffs suffered the injuries described above.

## COUNT V
### PLAINTIFFS v. ALL DEFENDANTS
### CONSPIRACY AND FAILURE TO PREVENT CONSPIRACY
### PURSUANT TO § 1983

181.   Plaintiffs incorporate by reference all other paragraphs and sections of this Complaint as if fully set forth herein.

182.   Defendants had an agreement to violate the Plaintiffs, and all other similarly situated pre-trial detainees and convicted prisoners' constitutional rights by hiring Garcia and CSAU1 to conduct training in York County Prison.

183.    In furtherance of that agreement, Defendants entered into a contract with Garcia and CSAU1, and then on March 21, 2021, May 1, 2021, and June 9, 2021 permitted them to enter the prison and violate the Plaintiffs, and all other similarly situated pre-trial detainees and convicted prisoners constitutional rights.

184.    At all times material hereto, Defendants Garcia and CSAU1 were acting in joint participation with the governmental defendants, and under the color of state law, in furtherance of the conspiracy to violate the Plaintiffs constitutional rights.

185.    The concerted action of Defendants violated the Plaintiffs' rights under the Due Process Clause of the Fourth Amendment and the Eighth Amendment.

186.    As the direct and proximate result of the conspiracy the Plaintiffs, and all other similarly situated pre-trial detainees and convicted prisoners, suffered the injuries described above.

## COUNT VI
## PLAINTIFFS v. YORK COUNTY, WHEELER, HOKE, SMITH, OGLE AND/OR DOLL
## MONELL CLAIM

187.    Plaintiffs incorporate by reference all other paragraphs and sections of this Complaint as if fully set forth herein.

188.    Defendants York County, Wheeler, Hoke, Smith and/or Orgle have a history of violating inmates' and detainees' civil rights.

189.    Defendant York County, acting by and through Defendants Wheeler, Hoke, Smith and/or Orgle, who collectively had final decision making authority

regarding the hiring, entered into a contract with Garcia and CSAU1, despite their knowledge that Garcia and CSAU1 engaged in unprovoked military tactics against inmates and detainees.

190.    Defendant York County, acting by and through Defendants Wheeler, Hoke, Smith and/or Orgle, who collectively had final decision making authority over the decision, recently renewed its contract with Garcia and CSAU1, despite knowing that Garcia and CSAU1 engaged in conduct and tactics that violated the right of pre-trial detainees and convicted prisoners at York County Prison.

191.    Notwithstanding York County's and/or Defendants Wheeler's and/or Hoke's and/or Smith's and/or Orgle's knowledge of rampant civil rights violations committed by Garcia and CSAU1, York County persists in contracting with and delegating its responsibility to secure its facility and protect its prisoners to Garcia and CSAU1.

192.    Defendants York County and/or Wheeler and/or Hoke and/or Smith and/or Orgle acquiesced in the unconstitutional conduct and use of force Garcia and CSAU1.

193.    Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the County is liable for violating Plaintiffs'/Class's constitutional rights because they have endorsed a practice that is customary and, hence, an unwritten

policy at the prison whereby Garcia's and CSAU1's unconstitutional abuse of inmates and pretrial detainees is acceptable.

194.  As a result of York County's and/or Defendants Wheeler's and/or Hoke's and/or Smith's and/or Orgle's failures, Plaintiffs and putative class members suffered and continue to suffer injuries and damages.

195.  If appropriate declaratory and injunctive relief, which is necessary to correct the unconstitutional conditions of confinement, are not granted, the harms suffered will be irreparable, because the unconstitutional policies, practices, and conditions will continue to exist for the foreseeable future.

## COUNT VII
## PLAINTIFFS v. GARCIA and JOHNS/JANES DOE
## VIOLATION OF STATE LAW
### (Assault and Battery)

196.  Plaintiffs incorporate by reference all other paragraphs and sections of this Complaint as if fully set forth herein.

197.  Garcia and Johns/Janes Doe intentionally and with reckless disregard for the safety of the Plaintiffs and class members physically and emotionally abused Plaintiffs and class members, causing harmful and offensive contact with Plaintiffs and class members.

198.  The actions of Garcia and Johns/Janes Doe constitute the torts of assault and battery under the laws of the Commonwealth of Pennsylvania.

199. As the direct and proximate cause of Defendants Garcia's and Johns/Janes Doe's conduct the Plaintiffs suffered the injuries described above.

### COUNT VIII
### PLAINTIFFS v. GARCIA and JOHNS/JANES DOE
### VIOLATION OF STATE LAW
### (Intentional Infliction of Emotional Distress)

200. Plaintiffs incorporate by reference all other paragraphs and sections of this Complaint as if fully set forth herein.

201. Garcia's and Johns/Janes Doe's conduct was intentional and malicious and done for the purpose of causing Plaintiffs and class members to suffer humiliation and mental anguish.

202. Garcia and Johns/Janes Doe acted with knowledge that Plaintiffs and class members would suffer emotional distress and took action with a wanton and reckless disregard for the consequences to the Plaintiffs and class members.

203. As a direct and proximate cause of Garcia's and Johns/Janes Doe's scandalous and outrageous conduct, the Plaintiffs and class members suffered humiliation, mental anguish, and emotional distress.

**WHEREFORE**, the named plaintiffs and plaintiff class request the following relief:

a.    For the named plaintiffs and members of the plaintiff class, compensatory damages for all injuries caused by the acts and omissions of the Defendants;

b.    For the named plaintiffs and members of the plaintiff class, punitive damages for all injuries caused by the acts and omissions of all Defendants except York County and Wheeler, Hoke, Smith and Orgle in their official capacities;

c.    For the named plaintiffs and the members of the plaintiff class, a declaratory judgment that the practices, policies, and conditions alleged in this Complaint are unconstitutional;

d.    For the named Plaintiffs and class members, a permanent injunction prohibiting the defendants from the implementation or application of the policies and practices alleged in this Complaint and specifically and Order requiring the defendants to either provide the plaintiff class with constitutionally acceptable conditions of confinement, and protection from sexual degradation or physical assaults or other dangers to their life or safety, or discharge the members of the class from custody;

e.    Nominal damages if appropriate;

f.    Reasonable attorneys' fees and costs of litigation;

g.    All other appropriate relief.

Plaintiffs and class members hereby demand a jury trial.

Respectfully submitted,

/s/ Leticia C. Chavez-Freed
LETICIA C. CHAVEZ-FREED, ESQUIRE
Pennsylvania ID No. 323615
THE CHAVEZ-FREED LAW OFFICE
2600 North Third Street | Second Floor
Harrisburg, PA 17110
(717) 893-5698
leticia@chavez-freedlaw.com

/s/ Alexandria J. Lappas
ALEXANDRIA J. LAPPAS, ESQUIRE
Pennsylvania ID No. 319331
THE CHAVEZ-FREED LAW OFFICE
2600 North Third Street | Second Floor
Harrisburg, PA 17110
(717) 893-5698
alexandria@chavez-freedlaw.com

/s/ Alan Denenberg
ALAN DENENBERG, ESQUIRE
Pennsylvania ID No. 54161
ABRAMSON & DENENBERG, P.C.
1315 Walnut Street | Suite 500
Philadelphia, PA 19107
(215) 398-7066
adenenberg@adlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I, Alan Denenberg, Esquire, hereby certify that on March 3, 2022, I served a true and correct copy of Plaintiffs' Amended Complaint via the Court's Electronic filing system

Date: March 3, 2022                                 s/ Alan Denenberg___
                                                         ALAN DENENBERG