IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER LEE SCHWENK and KIETH DRUCK, Individually, and on behalf of all others similarly situated, Plaintiff<br><br>v.<br><br>JOSEPH GARCIA, CORRECTIONS SPECIAL APPLICATION UNIT, LLC, YORK COUNTY, PENNSYLVANIA d/b/a/ YORK COUNTY PRISON, JULIE WHEELER, DOUG HOKE, RON SMITH, ADAM OGLE, CLAIR DOLL, and JOHN DOE and JANE DOE, CORRECTION OFFICERS Defendants | NO. 1:21-CV-02079<br><br>HON. JENNIFER P. WILSON<br><br>ELECTRONICALLY FILED<br><br>JURY TRIAL DEMANDED |

**YORK COUNTY DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**

**I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This Brief is filed by the County Defendants[1] in opposition to Plaintiffs' Motion to Certify Class Action.

Plaintiffs filed an Amended Complaint on March 3, 2022, which is the operative pleading in this matter. Doc. 19. Plaintiffs' claims arise out of their incarceration at the York County Prison ("YCP"). Id.  More specifically, Plaintiffs, who purport to act on behalf of a class of similarly situated YCP inmates, claim that their constitutional rights

---

[1] The County Defendants are York County Pennsylvania d/b/a York County Prison, Julie Wheeler, Doug Hoke, Ron Smith, Adam Ogle, and Clair Doll.

were violated in connection with alleged events involving YCP's "CSAU1 Team" that occurred in the spring and summer of 2021. Id.

In their Amended Complaint, Plaintiffs attempt to assert the following claims: 1) excessive force and cruel and unusual punishment under the Fourth, Eighth, and Fourteenth Amendments (Count I & II); 2) failure to intervene/bystander liability under the Eighth and Fourteenth Amendments (Count III); 3) substantive due process (Count IV); 3) claims under 42 U.S.C. § 1983 for conspiracy and failure to prevent conspiracy (Count V); 4) a Monell claim (Count VI); 5) assault and battery under state law (Count VII); and 6) intentional infliction of emotional distress under state law (Count VIII).

Plaintiffs' have requested both equitable and monetary relief. In their prayer for relief, they request monetary damages in the form of compensatory and punitive damages, as well as requests for declaratory relief and a permanent injunction. Doc. 19, pg. 66 of 68.

On March 11, 2022, Plaintiffs filed a Motion to Certify Class Action. Doc. 21. Plaintiffs request certification under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and have requested that the following class be certified:

> All pretrial detainees and inmates housed at York County Prison from November of 2020 onward who suffered excessive and/or malicious/sadistic force and abusive conditions of confinement during a number of training exercises conducted by Defendants in violation of their rights under the Eighth Amendment and/or Due Process Clause of the Fourteenth Amendment.

Doc. 21-2, Proposed Order. County Defendants file this Brief in Opposition to Plaintiffs' Motion to Certify.

## II.     ARGUMENT

### A. Class Certification is Improper Under 23(b)(3) and Should Be Denied.

#### 1. The Proposed Class Is Not Ascertainable Because A Mini-Hearing Would Need To Be Conducted For Each Proposed Class Member To Determine Their Membership In The Class.

A Rule 23(b)(3) class must be "currently and readily ascertainable based on objective criteria." City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc., 867 F.3d 434, 439 (3d Cir. 2017). A plaintiff must show that (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.' Id. "Plaintiff has the burden of making this showing by a preponderance of the evidence, and the district court must 'undertake a rigorous analysis of the evidence to determine if the standard is met.'" Id. The ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials. Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 359 (3d Cir. 2013).

A "fail-safe" class is not ascertainable. "A 'fail-safe' class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" Grubb v. Green Tree Servicing, LLC, No. 13-07421 (FLW), 2017 U.S.

Dist. LEXIS 117465, at *41 (D.N.J. July 26, 2017). The Northern District Court of Alabama stated the logical and practical problems presented by a fail-safe class:

> On the logical front, the class definition is essentially circular. It defines its members on the presumption that such members have viable claims against the defendant. So, the class definition assumes what it ostensibly seeks to prove. This is itself problematic . . . . The problems compound, however, when one considers the practical complications such definitions introduce. First, they permit plaintiffs to circumvent res judicata and basically rig the certification process so that they cannot lose. That is, [e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment. . . . This scenario is patently unfair to the defendant. Finally — and most obviously — a fail safe class is unmanageable because the members of the class could only be known after a determination of liability.

Grubb, 2017 U.S. Dist. LEXIS 117465, at *42-43. Courts have denied certification if the definition of the proposed class expressly states that the defendant engaged in culpable or prohibited conduct under the law. Id. at *43.

In Kondratick v. Beneficial Consumer Disc. Co., No. 04-4895, 2006 U.S. Dist. LEXIS 4754 (E.D. Pa. Feb. 8, 2006), the Kondraticks sought class certification of two sub-classes of Pennsylvania residents. The first sub-class was defined to include any person who entered into a specific contract with the Defendant to which the Defendant "failed to conform and comply." Id. at *22. The court determined that the proposed definition would require the court to conduct mini-hearings on the very core issue of the claim against the Defendants regarding whether they "failed to conform and

comply." Id. The second sub-class required an analysis of whether the other proposed class members experienced collection efforts due to the Defendants' interpretation of the discontinuance clause underlying their FDCPA claims. Id. at *27 (E.D. Pa. Feb. 8, 2006). Therefore, the second sub-class could not be certified for the same reasons as the first sub-class – it would require a mini-hearing on the merits of each proposed class members' case to determine their membership. Id. at *26.

The plaintiffs seeking class certification in Schilling v. Kenton Cty., No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050 (E.D. Ky. Jan. 27, 2011) proposed a class definition that is analogous to the one proposed by Plaintiffs in the instant matter. The Schilling plaintiffs "define[d] the class as consisting of individuals who while incarcerated were 'subjected to intentional physical and mental abuse by Defendants in violation of the Eighth Amendment ... and the Fourteenth Amendment' and were denied 'appropriate and necessary' medical care as a 'result of Defendants' neglect and deliberate indifference.'" Schilling v. Kenton Cty., 2011 U.S. Dist. LEXIS 8050, at *18-19. The Schilling court determined that this definition improperly required it to make a legal determination whether the inmates were deprived of constitutionally adequate medical care or subjected to physical and mental abuse in violation of their constitutional rights, which would be impossible to do without resolving the merits of their claims. Id. at *19.

Plaintiffs' proposed class definition creates a "fail-safe" class as the class is defined by the merits of the plaintiffs' legal claims: "…[P]retrial detainees and inmates

… who suffered excessive and/or malicious/sadistic force and abusive conditions of confinement … conducted by Defendants in violation of their rights under the Eighth Amendment and/or Due Process Clause of the Fourteenth Amendment." Doc. 21-2, Proposed Order. This Honorable Court would have to conduct a mini-trial for each proposed class member to determine their membership. Just as in <u>Schilling</u>, a legal determination would need to be made whether the detainees and inmates were subject to excessive force or abusive conditions of confinement in violation of their constitutional rights in order to determine their class membership. The need for such a determination makes this class unascertainable. As such, class certification should be denied.

### 2. Certification Under Rule 23(b)(3) Is Not Appropriate Because Individual Issues Predominate Over Questions Common To The Class Members.

Rule 23(b)(3) provides that a class action may be maintained only if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The two requirements of 23(b)(3) are predominance and superiority. <u>Bright v. Asset Acceptance, Inc.</u>, 292 F.R.D. 190, 201 (D.N.J. 2013) *citing* <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 310 (3d Cir. 2008). The

predominance requirement is more demanding than the commonality requirement in 23(a).[2] Bright v. Asset Acceptance, Inc., 292 F.R.D. at 201.

> This predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. To assess predominance, a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3). A plaintiff must demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members. Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.

Bright v. Asset Acceptance, Inc., 292 F.R.D. 190, 201 (D.N.J. 2013) *citing* Marcus v. BMW of N. Am., LLC, 687 F.3d 583 (3d Cir. 2012) (internal quotations and citations omitted).

Even questions of individual damage calculations may make class certification inappropriate when those questions will inevitably overwhelm questions common to the class. Comcast Corp. v. Behrend, 569 U.S. 27, 34, 133 S. Ct. 1426, 1433 (2013). In Bright, the plaintiffs alleged violations of the Fair Debt Collection Practices Act and sought class certification. Bright v. Asset Acceptance, Inc., 292 F.R.D. at 192. The court found that the predominance requirement was not met because individual fact-finding specific to each individual would be required to determine liability. Id. at 202. In

---

[2] Since Plaintiffs fail to satisfy the predominance requirement, they likewise fail to satisfy Rule 23(a)'s commonality requirement.

addition to the individual determinations relating to liability, the court found it even more troubling that the plaintiffs were requesting actual damages. Id. The individual damage calculations necessary to determine actual damages would have overwhelmed the questions common to the class, and, therefore, predominance could not be satisfied. Id. at 203.

In Garris v. Gianetti, 160 F.R.D. 61, 65 (E.D. Pa. 1994), the court addressed the requirement of predominance in cases alleging excessive force and determined that the questions affecting only the individual members of the class would predominate over the questions of law or fact common to the members of the class. In determining whether excessive force was used, the fact-finder would be required to assess the reasonableness of each officer's actions in light of the essentially unique factual circumstances surrounding each of the incidents. Id. These determinations cannot be made *en masse*, causing the court to remark that actions "alleging excessive force by law enforcement officers 'are especially unsuited to class disposition.'" Garris v. Gianetti, 160 F.R.D. at 65.

In this case, questions affecting only the individual members of the class would predominate over the questions of law or fact common to the members of the class, making class certification inappropriate. As in Garris, this case involves excessive use of force claims which are "especially unsuited" to class disposition. In order to determine whether excessive force was used on each class member, the fact-finder would be required to assess the reasonableness of each officer's actions in light of the

essentially unique factual circumstances surrounding each of the incidents. The fact-finder would also have to determine the subjective intent of the officer in connection with each individual class member, *i.e.* determining whether force was applied in a good faith effort to restore order, or applied maliciously with the intent to cause pain. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

The Amended Complaint sets forth four specific events of alleged excessive force that purportedly occurred on March 31, 2021; April 22, 2021; May 1, 2021; and June 9, 2021. However, Plaintiffs go on to allege that "this suit is not limited to these enumerated examples," suggesting that other incidents also may be involved in the lawsuit. Doc. 19 at ¶ 68. It is clear that each of those identified and unidentified events would require an individualized factual assessment that is not conducive to resolution on a class basis. This is equally true with respect to the damages calculation relating to each individual class member, to the extent they prevail on their civil rights claims. Each class member's medicals records would need to be evaluated individually to determine the extent of injury, scope of treatment, causation, and existence of pre-existing conditions. An individualized assessment also would be required with respect to any claim for psychological harm or emotional distress.

As discussed in more detail in Section B2 below, Plaintiffs' state law claims of assault and battery and intentional infliction of emotional distress will also require individualized factual assessments and determinations to determine both liability and damages. These claims are subjective in nature, especially intentional infliction of

emotional distress claims, and would require psychological or medical evidence specific to each member as well as individualized damages calculations. As in Bright, Plaintiffs' request for actual damages for physical and psychological harm destroys predominance. The necessary damage calculations will overwhelm the questions that are common to the class members.

Based on the foregoing, Plaintiffs fail to meet the requirement for predominance, and, therefore, class certification pursuant to 23(b)(3) should be denied.

### 3. Certification Under 23(b)(3) Should Be Denied As A Class Action Is Not The Superior Method Of Adjudication Because Of The Individualized Inquiries Required.

"A class action must represent the best 'available method[ ] for the fair and efficient adjudication of the controversy.'" McDonald v. Wells Fargo Bank, N.A., 374 F. Supp. 3d 462, 513 (W.D. Pa. 2019). "To evaluate superiority, we 'balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" Id. The McDonald court determined that its analysis of predominance and superiority were interconnected. Id. Just as the plaintiffs could not satisfy the requirement for predominance because of the individualized inquiries required, the plaintiffs also could not satisfy the requirement for superiority. Id. A jury could more easily adjudicate individualized proofs in separate proceedings. Id.

Just as in McDonald, Plaintiffs cannot satisfy the requirement for superiority for the same reasons they cannot satisfy predominance. As discussed above in Sections A1

and A2, this case will require individualized determinations relating both to liability and damages. The individualized determinations make a class action unmanageable and impractical. For these reasons, plaintiffs fail to satisfy the superiority requirement as a jury could more easily adjudicate these claims on an individual basis.

### B. Class Certification is Improper Under 23(b)(2) and Should Be Denied.

#### 1. Class Certification Under 23(b)(2) Should Be Denied Because Plaintiffs' Proposed Class Lacks Cohesiveness.

It is well established that 23(b)(2) class claims must be cohesive. Gates v. Rohm & Haas Co., 655 F.3d 255, 264 (3d Cir. 2011). In fact, a (b)(2) class may require more cohesiveness than a (b)(3) class since there is no opportunity for class members to opt out. Id. In Gates, the Third Circuit indicated its approval of the district court's method of determining cohesiveness by analyzing it in the same manner that a court would consider predominance. Id. at 265. Therefore, the inquiry is whether common or individual issues predominate. Baker v. Sorin Grp. Duetschland GMBH, No. 1:16-cv-00260, 2017 U.S. Dist. LEXIS 235430, at *28 (M.D. Pa. Oct. 23, 2017). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable" under 23(b)(2) because of a lack of cohesiveness. Id. at *28-29.

As discussed above in Section A2, Plaintiffs are not able to satisfy the predominance requirement because of the overwhelming *individual* issues that will

predominate over those questions that are common to the class. Therefore, their claims lack cohesiveness and cannot be certified as a class action.

### 2. Certification Under Rule 23(b)(2) Is Not Appropriate As The Relief Requested By Plaintiffs Relates Predominately To Money Damages.

Class actions certified under Rule 23(b)(2) are appropriate where the main relief sought is injunctive or declaratory relief. Frank v. Gov't of the V.I., No. 2009-66, 2010 U.S. Dist. LEXIS 32343, *10 (D.V.I. Mar. 31, 2010). However, "the Third Circuit has militated against Rule 23(b)(2) certification where 'the appropriate final relief relates exclusively or predominately to money damages.'" Id. at *11.

In Frank v. Gov't of the V.I., the plaintiff sought class certification pursuant to 23(b)(2). The plaintiff was a time-share owner in two residential real properties on St. Thomas. Id. He filed civil rights claims against the Board of Tax Review seeking both injunctive and monetary relief. Id. at *2.

Because plaintiff sought both equitable and monetary relief, the court had to examine whether the monetary relief predominated. Id. at *12. The court reviewed two cases to determine that the plaintiff's claims for monetary relief predominated over his claims for equitable relief. Id. at *15. The first was Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998). In Allison, the district court refused to certify a class of African-American employees challenging employment practices as racially discriminatory.

> The Fifth Circuit held that monetary relief predominates in a class action suit unless monetary damages are incidental to the equitable relief sought. The court defined as incidental, "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." When attempting to identify if monetary relief is incidental, the Court noted that "liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations."

Frank, No. 2009-66, 2010 U.S. Dist. LEXIS 32343, at *13-14 (D.V.I. Mar. 31, 2010)(internal citations omitted).

In the second case, Johnson v. Geico Cas. Co., 2009 U.S. Dist. LEXIS 121168, (D. Del. Dec. 30, 2009), the plaintiff asserted several claims including breach of contract, bad faith breach of insurance contract, breach of fair dealing, and common law fraud as a result of the defendants' denial of coverage. Frank, at *14. As it was unclear at the time of certification whether there would need to be additional hearings to determine damages for class members and whether damages would depend in part on the individual class members' circumstances, monetary damages were not incidental. Id. at *14-15. Accordingly, certification under Rule 23(b)(2) was inappropriate. Id. at *15.

Using these two cases, the Frank court determined that individualized calculations of damages would be necessary to determine the taxpayers' injuries. Id.

Therefore, the monetary relief requested was not incidental and predominated over claims for equitable relief. Id.

The Eastern District Court has also adopted the Allison test for determining whether monetary damages are incidental or predominant in an action that also involves injunctive relief:

> (1) "such damages should be of the kind to which class members would be automatically entitled; (2) "such damages should be computable by 'objective standards,' and not standards significantly reliant upon 'the intangible, subjective differences of each class member's circumstances;'" and (3) "such damages should not necessitate additional hearings."

Huegel v. City of Easton, No. 00-CV-5077, 2002 U.S. Dist. LEXIS 22273, at *9 (E.D. Pa. Oct. 22, 2002).

In Huegel, along with claims for injunctive relief, the plaintiffs asserted claims for emotional distress and punitive damages. Id. These were not damages that the class members would be automatically entitled to and would require additional hearings to determine the subjective differences of each class member. Id. The Huegel court specifically relied upon the Fifth Circuit's decision in Allison reasoning that claims for emotional damages are not conducive to a "class-wide remedy."

> Compensatory damages for emotional distress and other forms of intangible injury will not be presumed from mere violation of constitutional or statutory rights … Compensatory damages may be awarded only if the plaintiff submits proof of actual injury, often in the form of psychological or medical evidence, or other corroborating testimony from a third party. The very nature of these damages, compensating plaintiffs for emotional and other

> intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide remedy. The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards.

Huegel v. City of Easton, 2002 U.S. Dist. LEXIS 22273, at *10 *quoting* Allison v. Citgo Petroleum Corp., 151 F.3d at 416-417. The Huegel court determined that the punitive damages and damages from emotional distress do not flow directly from any potential liability to the class as a whole, and, accordingly, denied class certification pursuant to 23(b)(2). Id. at *11.

In this case, Plaintiffs have requested both equitable and monetary relief. In their prayer for relief, they list monetary damages first and then include a request for declaratory relief and a permanent injunction. Doc. 19, pg. 66 of 68. Their requested monetary damages include compensatory damages and punitive damages. They have asserted claims for civil rights violations as well as claims for assault and battery and intentional infliction of emotional distress, which all involve allegations of physical and emotional harm for which monetary compensation is sought. Doc. 19, Counts I – VIII.

Although the Amended Complaint sets forth four specific events, as discussed above in Section A2., Plaintiffs' pleading and their proposed class definition make it clear that there may be additional events, which are likely to be specific to the individual class members. These events specific to the individual class members will require additional hearings to determine each Plaintiffs' compensatory damages for each

incident. Additionally, as the courts discussed in Allison and Huegel, damages for emotional distress and punitive damages are not a class-wide remedy. These damages will also require an individualized assessment and determination no matter the number of alleged incidents involved.

It is clear that the monetary damages that the Plaintiffs seek are not incidental damages as they do not flow directly from liability to the class *as a whole*. As such, certification under Rule 23(b)(2) is not appropriate because the relief requested by Plaintiffs relates predominately to money damages.

## III.     CONCLUSION

For the foregoing reasons, the County Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion for Class Certification and strike Plaintiffs' class allegations in their Amended Complaint.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

Dated: April 7, 2022     By:     */s/ Matthew R. Clayberger*
Matthew R. Clayberger, Esquire
PA Attorney No. 316102
Amanda L. Hennessey, Esquire
PA Attorney No. 314312
PO Box 999
Harrisburg, PA  17108-0999
(717) 237-7150
mclayberger@tthlaw.com
Counsel for the County Defendants

Case 1:21-cv-02079-JPW   Document 33   Filed 04/07/22   Page 17 of 18

## CERTIFICATE OF WORD COUNT

The undersigned certifies that the foregoing Brief contains 3,708 words according to the word count function on Microsoft Word, which is within the word limit set forth in Local Rule 7.8.

**THOMAS, THOMAS & HAFER, LLP**

Dated: April 7, 2022     By:   */s/ Matthew R. Clayberger*
                                Matthew R. Clayberger, Esquire

## CERTIFICATE OF SERVICE

I, April Casper, of the law firm of Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the foregoing document(s) was served upon the following via ECF Filing:

Leticia C. Chavez-Freed, Esq.     leticia@chavez-freedlaw.com

Alan Denenberg, Esq.              adenenberg@adlawfirm.com

**THOMAS, THOMAS & HAFER, LLP**

Dated: April 7, 2022     By:   */s/ April Casper*
                                April Casper