## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER LEE SCHWENK and KEITH DRUCK, | : : : | Civil No. 1:21-CV-02079 |
| Plaintiffs, | : : | |
| v. | : : | |
| JOSEPH GARCIA, *et al.*, | : : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court are the motion to intervene filed by forty-eight pre-trial detainees and post-conviction inmates (collectively, "Intervenors"), and the second motion for leave to file an amended complaint filed by Plaintiffs Christopher Lee Schwenk ("Schwenk") and Keith Druck ("Druck").  (Docs. 67, 79.)  This case involves allegations of excessive force during Plaintiffs' and Intervenors' incarceration at York County Prison ("YCP").  The motion to intervene seeks to add forty-eight individuals whose claims arise from the same circumstances as Plaintiffs' or involve the same defendants.  The second motion to amend the complaint seeks to add identities of some of the John Doe Defendants.[1]  For the reasons that follow, both motions will be denied.

---

[1] While this motion is titled the "second motion to amend the complaint," the court notes that this is the first motion to amend the complaint.  An amended complaint was filed as a matter of course on March 3, 2022.  (Doc. 19.)  For clarity, the court will refer to this as the "seconded amended complaint" because that is how the motion is titled.

**FACTUAL AND PROCEDURAL BACKGROUND**

Schwenk and Druck commenced this action by filing a complaint on December 13, 2021.  (Doc. 1.)  Defendants Clair Doll ("Doll"), Doug Hoke ("Hoke"), Ron Smith ("Smith"), Julie Wheeler ("Wheeler"), and York County, Pennsylvania (collectively "County Defendants") filed a motion to dismiss for failure to state a claim on February 10, 2022, which was rendered moot by virtue of Plaintiffs filing an amended complaint as of right on March 13, 2022.  (Docs. 12, 19.)

The amended complaint focuses on the contract between York County and Defendants Joseph Garcia ("Garcia") and Corrections Special Application Unit, LLC ("CSAU"), in which Garcia and CSAU were contracted "to train YCP staff, to create policies for YCP, and to create and implement a YCP Special Operations Unit (a/k/a Red Team a/k/a C-SAU1 Team a/k/a SOG) ("C-SAU1 Team")."  (Doc. 19, ¶ 39.)  The contract between YCP and CSAU was in effect in 2020 and 2021. (*Id.* ¶¶ 40, 41.)  Garcia and CSAU1 allegedly "aggressively push the application of military-style 'special operations' and militaristic tactics and weapons of war in the corrections setting, including at YCP."  (*Id.* ¶ 31.)

Specifically, Plaintiffs allege at least three incidents that purportedly demonstrate CSAU's policy of excessive force.[2]  First, on March 31, 2021, YCP commenced a training exercise in which C-SAU1 Team members and Garcia woke inmates at 4:30 a.m. and removed them from their cells at gunpoint.  (*Id.* ¶ 73.)  The inmates were first forced to strip naked and stand still, or else they were told they would be shot or a K9 officer would bite them.  (*Id.* ¶¶ 74, 75.)  Then, the inmates were directed to get dressed and marched to the gymnasium, where they stood handcuffed and facing a wall for over five hours.  (*Id.* ¶¶ 76–78.)  While facing the wall, officers were instructed to "lock, load, and take aim" at the inmates.  (*Id.* ¶ 86.)  Throughout this ordeal, several inmates "began having mental health emergencies," but were denied treatment and were further threatened.  (*Id.* ¶¶ 81–84.)  This incident was posted on Garcia's Facebook page.  (*Id.* ¶ 89.)

Second, on May 1, 2021, members of the C-SAU1 Team stormed an area of YCP known as "C-Pod" without warning and shot at the inmates residing in C-Pod (*Id.* ¶¶ 95, 96.)  Third, on June 9, 2021, C-SAU1 Team members "burst" into a housing pod without warning and fired a shotgun at inmates after a corrections

---

[2] However, Plaintiffs are clear that the "suit is not limited to these enumerated examples."  (*Id.* ¶ 68.)  This point is amplified by the statements of fact relating to the putative class members, which allege not only the three main incidents detailed in the amended complaint, but at least three other incidents occurring on various specified dates.  (Doc. 79-2, ¶¶ 113, 117, 135, 138, 146.)

officer "mistakenly called for backup."  (*Id.* ¶¶ 99, 100.)  As noted, the Plaintiffs also alleged:

> multiple other incidents of violence, excessive force, and illegal use of force and weapons inside YCP by the defendants [including but not limited to:] forcing prisoners to strip naked at gunpoint without warning or provocation, shooting rubber/cork bullets at prisoners, abusing inmates verbally in order to instill terror and subjugation, and the use of a K9 as an agent of terror."

(*Id.* ¶ 104.)

Plaintiffs then alleged facts relating to the putative class members, which include thirty inmates involved in the March 31, 2021 incident, eight inmates involved in the May 1, 2021 shooting in C-Pod, and eight inmates involved in the June 9, 2021 shooting.

The inmates involved or present at the March 31, 2021 incident were: Christopher Schwenk, Keith Druck, Louis Reyes Aleman, Samee Childs, Michael Clark, Wyatt Dettinger, Christopher Gibson, Christopher Heikes, Jose Ruiz Hernandez, David Vincent Heim, Tay-Yaugnn Chandler-Hope, Gregory Kindard, Scott Klunk, Jacob Largent, David Leatherman, Shaker Luzinger, Hector Morales, Bryan Morris, Jonathan Murray, Christopher Nduku, Nelson Ortiz, Christian Piette, Isaias Ramos, Luis Rodriguez, Zachary Blake Schalizki, Zukael Stephens, James Thompson, Julian Gallegos Villanueva, De'Sean Williams, and Joshua Zink.  (Doc. 19.)

The inmates involved or present at the May 1, 2021 incident were: Ronald Boyd, Michael Failla, Tay-Yaugnn Chandler-Hope, Bryan Manso Jimenez, Michael Edwin Johnson, Scott Jones, Alexander Pabon, Jr., and Gordon Wilson. (*Id.*) The inmates involved or present at the June 9, 2021 incident were: Daiquan Dickerson, Syied Drummond, Fabian Morris, Charles Eugene Nolden, Wayne Smith, Justin Tayman, Richard Tyler, and Isaiah Valenti. (*Id.*)

There is also one allegation from an unspecified date in April 2021, one allegation from April 22, 2021, and two additional unspecified allegations of excessive force and sexual abuse. (*Id.*)[3] Plaintiffs alleged that sometime in April 2021, CSAU members came into Justin Tayman's housing pod, presumably to perform a search, but instead they forced Tayman and the others in the pod to lay on their stomachs on the ground for an hour. They further "forced [Tayman] to strip naked in front of other inmates and guards, show his penis and testicles to the C-SAU1 Team." C-SAU team members yelled sexually degrading things at him and also rifled through his personal belongings. (*Id.* ¶ 146.)

Plaintiffs also alleged that Michael Keys was subjected to excessive force on April 22, 2021 when C-SAU 1 Team members entered his pod for no reason,

---

[3] The court also notes that Intervenors' proposed amended complaint is the same as the amended complaint with respect to who was involved in these three incidents. The proposed amended complaint also includes four additional inmates who allege they were involved in either the March 31, 2021, and/or May 1, 2021, and/or June 9, 2021, incident. (Doc. 67-1, ¶ 146.) These inmates are Frank Dortch, Raeshawn Michael, Jerrod Scott, and Azijah Sweeney. (*Id.*)

began yelling, and held the inmates at gunpoint.  (*Id.* ¶ 125.)  Keys and the inmates in his pod were forced to stand up, strip naked, and sit with their hands on their heads for one hour.  (*Id.*)  They were then forced into the prison day room and threatened with the use of a K9 officer.  (*Id.*)

Additionally, Plaintiffs allege that Ronald Hyser was subjected generally to excessive force throughout his incarceration, including being held at gunpoint, threatened with deadly force, and forced to strip naked in front of other inmates. (*Id.* ¶ 121.)  Plaintiffs also allege that David Seecharran was repeatedly sexually degraded and forced to strip naked at gunpoint in front of inmates and guards, had a flashlight shined on his genitals, and forced to display his genitals and anus.  (*Id.* ¶ 143.)

Count I alleges a violation of the due process clause of the Fourteenth Amendment through use of excessive force against all defendants on behalf of the pre-trial detainees.[4]  Count II alleges a violation of the Eighth Amendment through use of excessive force and cruel and unusual punishment against all defendants on behalf of convicted inmates.[5]  Count III alleges Eighth and Fourteenth Amendment

---

[4] The pre-trial detainees are Plaintiff Scwhenk, and Intervenors Boyd, Childs, Clark, Dettinger, Dickerson, Drummond, Failla, Gibson, Heim, Hernandez, Chandler-Hope, Hyser, Johnson, Jones, Keys, Kinard, Klunk, Darren, Leatherman, Lutzinger, Morales, Morris, Morris, Murray, Nduku, Holden, Ortiz, Pabon, Piette, Ramos, Luis Rodriguez, Scott, Seecharran, Smith, Stephens, Sweeney, Tayman, Thompson, Tyler, Villanueva, Williams, and Wilson.

[5] The convicted inmates are Plaintiff Druck, and Intervenors Dortch, Heikes, Jimenez, Michael, Reyes, Schalizki, Valenti, Zink.

failure to intervene and bystander liability claim against Garcia and John/Jane Doe correctional officers.  Count IV alleges a Fourteenth Amendment violation of substantive due process against Wheeler, Hoke, Smith, Ogle and/or Doll.  Count V alleges a conspiracy and failure to prevent conspiracy claim pursuant to 42 U.S.C. § 1983 against all defendants.  Count VI alleges a *Monell* claim against all County Defendants.  Count VII alleges a state law assault and battery claim against Garcia and John/Jane Doe correctional officers.  Count VIII alleges a state law intentional infliction of emotional distress claim against Garcia and John/Jane Doe correctional officers.  The complaint requests compensatory damages, punitive damages, a declaratory judgment that the practices alleged in the complaint are unconstitutional, a permanent injunction prohibiting defendants from continuing these policies and requiring defendants to "either provide the plaintiff class with constitutionally acceptable conditions of confinement, and protection from sexual degradation or physical assaults or other dangers to their life or safety, or discharge the members of the class from custody . . . ."  (*Id.*, p. 66.)[6]

Plaintiffs filed a motion to certify class on March 11, 2022.  (Doc. 21.) County Defendants filed a motion to dismiss for failure to state a claim on March 24, 2022.  (Doc. 26.)  Discovery was stayed on October 4, 2022, and the case was

---

[6] For ease of reference, the court utilizes the page numbers contained in the CM/ECF header.

referred to Magistrate Judge Martin C. Carlson for pretrial management and resolution of the pending motions on November 9, 2022.  (Docs. 47, 48.)  On January 24, 2023, Judge Carlson recommended granting the motion to dismiss with respect to Count IV because it should be subsumed into Count I but recommended denying the motion in all other respects.  (Doc. 52.)  That same day, Judge Carlson, recommended denying the motion to certify class, in large part because individualized questions of law and fact predominate.  (Doc. 53.)  The court, over Plaintiffs' objection, adopted Judge Carlson's recommendation regarding the motion to dismiss on February 21, 2023.  (Doc. 49.)  The court, over Plaintiffs' objection, adopted Judge Carlson's recommendation regarding the motion to certify class on March 24, 2023.  (Doc. 64.)

On June 6, 2023, Intervenors filed a motion to intervene.[7]  (Doc. 67).  Thereafter, Plaintiffs also filed a motion to amend the complaint on September 29, 2023.  (Doc. 79.)  Both motions have been fully briefed and are ripe for disposition.

---

[7] The court notes that the Intervenors are often referred to as "putative class members" and are the same individuals who Plaintiffs sought to have made part of the class through their motion to certify class.  The court will refer to this group of individuals as "Intervenors" in this opinion for clarity.

## STANDARD OF REVIEW

### A. Motion to Intervene

Federal Rule of Civil Procedure 24 provides for two forms of intervention.

First, Rule 24 provides:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Second, Rule 24 provides for permissive intervention, which allows the court, on timely motion, to "permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). Further, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

### B. Motion to Amend Complaint

Under Federal Rule of Civil Procedure 15, a party seeking to amend a pleading more than twenty-one days after service of the pleading may only do so with the written consent of the opposing party or leave of the court, but the court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Indeed, the Supreme Court has held that "in the absence of any apparent or

declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

### A. Motion to Intervene

Intervenors argue they are entitled to intervention as of right because they filed a timely motion, they have a sufficient interest in the litigation that is under threat, and this interest will not be adequately represented by existing Plaintiffs. (Doc. 68, pp. 8, 9.)  County Defendants respond that Intervenors do not have a sufficient interest in this litigation, and the interest will not be impaired by the disposition of this case.  (Doc. 69, pp. 5–9.)

### 1.  Intervention as of Right

Federal Rule of Civil Procedure 24 provides that:

[T]he court must permit anyone to intervene who:

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  The Court of Appeals for the Third Circuit has held that:

[A] non-party is permitted to intervene under Rule 24(a)(2) only if: (1) the application for intervention is timely; (2) the applicant has a

sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365–66 (3d Cir. 1995). Each of these requirements must be met to permit a party to intervene as of right. *Id.* at 366. The court will discuss the intervention elements seriatim.

### i. Timeliness

Courts consider "the totality of the circumstances" when conducting a timeliness analysis. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005). "Among the factors to be considered are: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Id.* (citing *Mountain Top*, 72 F.3d at 369).

Intervenors argue that the motion is timely because, although having now spanned multiple years, the litigation is still in an early stage due to discovery having been stayed in order for the court to decide the motions to certify class and dismiss. (Doc. 68, p. 11.) They also argue that County Defendants will not suffer any prejudice because they have been on notice regarding the number of potential additional plaintiffs since the start of the litigation. (*Id.* at 12.) Finally, Intervenors argue that they have not delayed the proceeding because they filed the instant motion to intervene less than thirty days after the decision denying their motion to

certify class became final.  (*Id.* at 13.)  County Defendants do not contest the timeliness of the motion.

Here, for the reasons stated by Intervenors, the motion is timely.  Although this lawsuit is now two years old and addresses events which happened three years ago, the case is still at an early stage of discovery.  (Doc. 82.)  Additionally, the prejudice to the County Defendants is minimal because they have been on notice of the identities of the Intervenors since the beginning of the litigation.  Finally, Intervenors had good reason for the delay, due to their initial attempt to have this action certified as a class action and the time needed to resolve those motions.  Therefore, the Intervenors' motion is timely.

### ii.  Interest in Litigation[8]

Rule 24(a)(2) requires an intervenor to establish "an interest relating to the property or transaction which is the subject of the action."  *Mountain Top*, 72 F.3d at 366.  Such interest must be "significantly protectable," meaning that the lawsuit in which the party seeks to intervene must present "a tangible threat to a legally cognizable interest."  *Id.*  The Third Circuit has stated that "a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene.  Thus, the mere fact that a lawsuit may impede a third party's ability to

---

[8] Because prongs one and two are closely connected and deal with different aspects of the Intervenors' interest in this litigation, the court will address these two prongs together.

recover in a separate suit ordinarily does not give the third party a right to intervene." *Id.* Rather, the interest may be sufficient if "a determination of the action in the applicants' absence will have a significant *stare decisis* effect on their claims, or if the applicants' rights may be affected by a proposed remedy." *Brody by Brody and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992.) Additionally, "an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *Mountain Top*, 72 F.3d at 366.

Overall, this analysis demands a flexible approach and permits reliance "upon pragmatic considerations such as the benefits derived from consolidation of disputes into one proceeding. Those considerations, however, should not prevail if the focus of the litigation would be unduly dissipated or case management would become exceptionally complex." *In re Safeguard Scis.*, 220 F.R.D. 43, 48 (E.D. Pa. 2004). As the Third Circuit noted in *Kleissler*:

> [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantial concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

157 F.3d at 972.

To show that their interest will be impaired if the litigation proceeds without them, the intervenors "must show that [their] absence in the action poses a

'tangible threat' to [their] interest, such as 'a significant stare decisis effect' on [their] claims." *Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 349 (M.D. Pa. 2013).  "Courts have held that where the parties to the litigation share the position of the movant, stare decisis or collateral estoppel problems are lessened." *Id.*

Relying on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982), Intervenors claim they have an interest in this litigation because they have a constitutionally protected interest in their own causes of action against Defendants, which are identical to the causes of action asserted by Plaintiffs.  (Doc. 68, p. 14.) Further, Intervenors argue their interest will be impacted by the outcome of this litigation because of the "precedential and/or an estoppel impact" on any future suit an Intervenor may bring.  (*Id.* at 15.)  Finally, Intervenors argue that resolving this case without them poses a tangible threat to their interest because of the risk of inconsistent verdicts and the inefficient use of judicial resources that would result from having fifty separate juries decide the same issues.  (*Id.* at 16.)

County Defendants distinguish Intervenors reliance on *Logan*, arguing that Intervenors may have a legal interest in their own claims, but that is not sufficient to give them an interest in this litigation.  (Doc. 69, p. 6.)  County Defendants further argue that Intervenors do not have a significant interest in this litigation because they have no legal relationship with Plaintiffs such that the outcome of this

case would have any precedential effect on their future cases, and the risk of inconsistent outcomes alone is insufficient to require intervention. (*Id.* at 8–9.)

Having considered the parties' arguments, the Intervenors will not be permitted to intervene as of right because the outcome of this litigation does not pose a tangible threat to any of the legal claims the Intervenors have against Defendants. Initially, the court notes that the case relied upon by Intervenors has no relation to whether they have a sufficient interest or are sufficiently connected to this case to justify intervention; rather, it merely states that "a cause of action is a species of property protected by the Fourteenth Amendment Due Process Clause." *Logan*, 455 U.S. at 428. *Logan* dealt with the issue of whether an employee had a protectable legal interest in his employment discrimination claim such that dismissal of his claim due to the state commission's failure to hold a timely conference violated his due process and equal protection rights. *Id.* at 430. *Logan* certainly stands for the proposition that Intervenors have a protectable property interest in their claims, but the fact that Intervenors have an interest in their own claims does not mean that they have an interest in this case which entitles them to intervene in this case.

But, even assuming Intervenors do have an interest in this case, there is no tangible threat to that interest from this case proceeding without them. While there may be similar legal and factual issues, the parties are not in privity with one

another such that it would prevent an Intervenor from bringing the same claims that Plaintiffs bring against Defendants.  Moreover, Plaintiffs are currently asking for monetary damages and injunctive relief preventing Defendants from engaging in these policies and practices in the future.  If Plaintiffs were to be awarded this relief, there would be no impact on Intervenors' claims against Defendants because there is not some limited fund from which damages will be paid.  Additionally, avoiding inconsistent rulings "do[es] not justify intervention as of right." *Nat'l Collegiate Athletic Ass'n*, 296 F.R.D. at 348.

Finally, allowing intervention would make this case unmanageable.  While a majority of the intervenors were involved in the three specific incidents alleged by Plaintiffs, some intervenors were not involved at all in those events, but bring claims arising from distinct factual scenarios against Defendants.  Further, as Magistrate Judge Carlson noted in his report and recommendation regarding class certification, excessive force claims are unsuited for disposition with multiple plaintiffs because "the fact-finder would be required to assess the reasonableness of each officer's actions in light of the essentially unique factual circumstances surrounding each of the incidents."  Doc. 53, p. 26 (citing *Garris v. Gianetti*, 160 F.R.D. 61, 65 (E.D. Pa. 1994)).  Finally, because Plaintiffs and Intervenors request compensatory damages, "[t]he need to establish liability and damages with respect to each [plaintiff] would require a detailed factual inquiry to establish the

circumstances and surroundings of each [plaintiff,]" resulting in a "strain" on court resources. *Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 272 (E.D. Pa. 2000). Thus, there is no tangible threat to Intervenors interest in their claims by this case going forward without them, and the court will deny the motion to intervene as of right.[9]

### 2. Permissive Intervention

Permissive intervention under Rule 24(b)(2) is allowed on timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In deciding whether to permit intervention under Rule 24(b), "courts consider whether the proposed intervenors will add anything to the litigation." *See Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 471 (M.D. Pa. 2005). Courts should also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Nat'l Collegiate Athletic Ass'n*, 296 F.R.D. at 350.

Intervenors argue that their motion to intervene is timely, there are common questions of law or fact, County Defendants suffer no prejudice from allowing intervention because they have known of potential additional plaintiffs from the outset of the litigation, and intervention will not unduly delay the proceedings

---

[9] Because the court concludes that Intervenors have not established a valid interest that will be sufficiently impacted by this litigation, the court does not address the remaining elements since *each* of these requirements must be met in order for a party to intervene as of right. *Mountain Top*, 72 F.3d at 366.

because discovery has just begun and there are issues in which discovery for Plaintiffs and Intervenors will have in common.  (Doc. 68, pp. 19–20.)  County Defendants focus on the inefficiencies that would result from adding forty-eight additional plaintiffs, including discovery issues and further delay in a case that is already two years old and not very far along.  (Doc. 69, pp. 14–16.)

As explained above, Intervenors' motion is timely, and there are clearly common questions of law and fact.  However, the court agrees with County Defendants that allowing intervention will result in a protracted discovery process which will unduly delay the proceedings because there will need to be discovery conducted regarding each of the forty-eight new claims.  Further, allowing intervention will ultimately result in resolving fifty distinct factual claims and potentially determining the remedies for the injuries of fifty different people, which will further delay the litigation.  Accordingly, in the exercise of the court's discretion, the court will deny the motion for permissive intervention.

**B.  Motion to Amend Complaint**

Plaintiffs seek to amend the amended complaint in order to add the identities of some, but not all, John Doe corrections officers.  (Doc. 79.)  After reciting the law from Rule 15 and *Foman v. Davis*, 371 U.S. 178, 182 (1962), the entirety of Plaintiffs' argument is as follows: "

[N]o factors weigh against granting Plaintiffs' request to file a second amended complaint.  To the contrary, amending the complaint to add

> newly named defendants is important to ensure that justice will be
> served.  Plaintiffs' counsel has reviewed the documents, grievances and
> disclosures and now concludes that the John Doe defendants (some not
> all) have been identified.

(Doc. 80, pp. 5, 6.)  In their brief, Plaintiffs do not identify the officers to be added,

and they offer no explanation of how the officers are related to the incidents

alleged in the complaint.  Rather, Plaintiffs attach the proposed second amended

complaint, which, after the court's review, shows that Plaintiffs are seeking to add

Deputy Warden Shawn Rohrbaugh ("Rohrbaugh"), Lieutenant Joseph Johnston

("Johnston"), Lieutenant Fred Belton ("Belton"), Corrections Officer Nathan

Deremer ("Deremer"), and Corrections Officer Eric Bush ("Bush") (collectively,

"proposed Defendants").[10]  (Doc. 79-2, p. 1.)  Per the allegations in the proposed

second amended complaint, Deremer, Belton, and/or Johnston participated in the

May 1, 2021 incident.  (*Id.* ¶¶ 97–101.)  Additionally, Bush, Belton, and/or

Johnston participated in the June 9, 2021 incident.  (*Id.* ¶ 107.)

     County Defendants argue that the statute of limitations for claims against the

proposed Defendants has passed, and the second amended complaint should not

relate back to the amended complaint because the addition of proposed Defendants

---

[10] The proposed Defendants' full names were gleaned from County Defendants' brief in
opposition to the motion to amend.  (Doc. 81, p. 3.)  The proposed second amended complaint
provides no first name for Rohrbaugh, Belton, or Deremer, and also misspells Rohrbaugh's last
name as "Rohraugh."  Because the proposed defendants are employees of Defendant York
County and counsel for York County presumably has access to correct information regarding
these individuals' names, the court will use the names provided by County Defendants.

was not made within the time period provided by Rule 15(c), such that proposed

Defendants did not have notice they were involved in this suit, and relation back

would prejudice proposed Defendants.  (Doc. 81, pp. 5–7.)

       Federal Rule of Civil Procedure 15 provides that a party seeking to amend a

pleading more than twenty-one days after service of the pleading may only do so

with the written consent of the opposing party or leave of the court, but the court

"should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The

Supreme Court has held that "in the absence of any apparent or declared reason –

such as undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc. – the leave sought should, as the rules require, be 'freely

given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Generally, the non-moving

party bears the burden to show why leave to amend should not be granted.  *Kern v.*

*Phoenixville Hospital, LLC*, 342 F.R.D. 234, 327 (E.D. Pa. 2012).  The court

understands that County Defendants' argument that Plaintiffs may not add

proposed Defendants because the statute of limitations has run is an argument that

adding these defendants would be futile.  *See Garvin v. City of Phila.*, 354 F.3d

215, 222 (3d Cir. 2003).

Actions brought under § 1983 borrow the statute of limitations which governs "the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d. Cir. 2009) (citing *Wallace v. Kato*, 548 U.S. 384, 387 (2007)); *see also Garvin*, 354 F.3d at 220.  In Pennsylvania, the relevant statute of limitations governing personal injury claims is two years.  42 PA. CON. STAT. § 5524(7).  As County Defendants note, all allegations in this case occurred on or before June 9, 2021, meaning that the statute of limitations for these incidents expired, at the latest, on June 9, 2023.  (Doc. 81, p. 4.)  The instant motion to amend was filed on September 29, 2023, outside of the relevant limitations period.  Therefore, County Defendants have shown that adding the proposed Defendants would be futile because the statute of limitations on the claims against them has passed.

County Defendants also argue that the proposed second amended complaint should not be permitted to relate back to the amended complaint.  Plaintiffs make no argument regarding relation back.

To show that their proposed amendment can relate back, Plaintiffs must satisfy Rule 15(c)(1), which provides in pertinent part:

> An amendment of a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by

Rule 4(m) for serving the summons and complaint, the party to be brought in the amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for the mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1). "Replacing the name John Doe with a party's real name amounts to the changing of a party or the naming of a party under Rule 15(c), and thus the amended complaint will relate back only if the three conditions specified in that rule are satisfied." *Garvin*, 354 F.3d at 220.

Because Plaintiffs make no argument regarding whether their proposed second amended complaint relates back to an earlier pleading such that they can add the proposed Defendants, the court will not address this argument and will instead deny the motion to amend without prejudice.

## CONCLUSION

Intervenors' motion to intervene will be denied. Plaintiffs second motion to amend their complaint will be denied without prejudice. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: December 1, 2023