## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER LEE SCHWENK, et. al,** | **C. A. No.  1:21-CV-2079** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **JOSEPH GARCIA, et. al,** | |
| **Defendants.** | ***Electronically Filed Document*** |

## PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JOSEPH GARCIA'S RULE 60(b) MOTION TO VACATE <u>AND RULE 12(b) MOTION TO DISMISS</u>

# **Table of Contents**

Procedural History………………………………………………………………1

Facts Relevant To Plaintiffs' Motions………………...………………………3

ARGUMENT…………………………………………………………………8

A.  Defendant's Motion to Vacate Should Be Denied…………………….……8

  1.  Defendant Has No Meritorious Defense……………………………...8

  2.  Defendant's Default Resulted From
      Defendant's Culpable Conduct…………………………………...10

  3.  Defendant's Arguments For Vacatur
      Are Baseless And Should Be Rejected……………………………...11

B.  Defendant's Motion to Dismiss Should Be Denied………………………12

CONCLUSION…………………………………………………………...…16

## **Table of Authorities**

*Babayoff v. Hazlet Manor Associates,*
    2023 WL 1813489 (3d Cir. Feb. 8, 2023)…………………………..11

*Blair v. City of Worcester*, 522 F.3d 105 (1st Cir. 2008)…………………………11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)………………….…..……13

*Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510 (3d Cir. 1971)………………………11

*Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653 (3d Cir. 1982)……….…..…..8

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir.1998)…………..………12

*Hritz v. Woma Corp.*, 732 F.2d 1178 (3d Cir. 1984)……..…………………..…8, 11

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)…………………….…..…..13

*Klein v. Council of Chem. Associations*, 587 F.Supp. 213 (E.D. Pa. 1984)…..…..15

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Ed.*,
    24 F.3d 519 524 (3d Cir.1994)…………………………………..……14

*Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003)………………………………..……9

*Pagan v. Morton,* 2025 WL 757478 (M.D. Pa. Mar. 10, 2025)……………..……..9

*Perry v. Commonwealth*, 328 Fed. App'x 785, 787 (3d Cir. 2009)…………..……8

*Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002)………………………………….…..9

*Stephens v. Kerrigan*, 122 F.3d 171 (3d Cir. 1997)………………………………14

*United States v. $55,518.05 in U.S. Currency,*
    728 F.2d 192 (3d Cir. 1984)…………………………………..8, 9, 10

*Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131 (3d Cir. 2023)……………...……..15

Plaintiffs Christopher Lee Schwenk and Keith Druck, by and through their attorneys The Chavez-Freed Law Office and Abramson & Denenberg, P.C., respectfully submit herein their Omnibus Brief In Opposition To Defendant Joseph Garcia's Rule 60(b) Motion To Vacate (Doc. 117) and Rule 12(b) Motion To Dismiss. (Doc. 116.)  Because the factual contentions and the grounds argued by Defendant in his motions largely overlap, for the Court's convenience Plaintiffs submit a single Omnibus Memorandum in Opposition.

## **PROCEDURAL HSTORY**

Plaintiffs served the Summons and Complaint on Defendants, Joseph Garcia and Corrections Special Application Unit, LLC (CSAU) on January 11, 2022 (Doc. 14) and filed a First Amended Complaint on March 3, 2022, which included no additional claims, against the same defendants. (Doc. 19).  Neither Garcia nor CSAU answered or otherwise responded to the Original or the First Amended Complaint.  On November 15, 2022, the Clerk of Court granted Plaintiffs' request for entry of default (Doc. 50), pursuant to Plaintiffs' request made July 18, 2022. (Doc. 44).  On May 22, 2025, after review of Plaintiffs' Motion For Default Judgment And Request For Evidentiary Hearing (Doc. 102), this honorable Court conducted an FRCP 55(b)(2)(B) hearing.  Following that hearing, the Court Ordered Plaintiffs to submit factually similar cases as supplemental authority regarding the amount of damages to be awarded in this case (Doc. 113), which

they did on June 6, 2025. (Doc. 114.)

On June 10, 2025, the Court denied without prejudice (Doc. 115) Plaintiffs' Motion For Default Judgement (Doc. 102). The Court first noted that because the Prison Litigation Reform Act of 1995 ("PLRA") relieves a defendant of the obligation to reply to a Complaint absent an Order directing it to do so, a plaintiff cannot obtain a default judgment "unless and until defendant fails to answer following a direct order of court" (*Id.*, at 2.) The Court accordingly ordered that: (i) Plaintiffs serve Defendants with the June 10, 2025 Order, (ii) "Defendants Garcia and CSAU shall reply to the complaint within thirty (30) days of the date when Plaintiffs docket [a] certificate of service," and, (iii) that Plaintiffs may refile their Motion For Default Judgment should Defendants Garcia and CSAU fail to reply. (*Id.*, at 3.)

Second, the Court observed that "it appears Defendants could have a litigable defense that Plaintiffs failed to exhaust their administrative remedies," and denied entry of default judgment without prejudice for that reason also. (*Id.*, at 2.)

On June 21, 2025, Plaintiffs served the Court's June 10, 2025 Order on Defendants Garcia and CSAU, and they filed the certificate of service on the docket on July 10, 2025. (Doc. 118.). Defendant Garcia replied to the Complaint on June 27, 2025, filing motions: (i) "to vacate the default judgment entered against him in 2023" (apparently in reference to the Clerk's Entry of Default dated

2

November 15, 2022) on the grounds of improper service, excusable neglect, and lack of personal jurisdiction, (Doc. 117, at 1), and; (ii) to dismiss, "due to improper service, lack of personal jurisdiction, and Plaintiff's failure to state viable § 1983 or state law claims." (Doc. 116, at 2.)

### **FACTS RELEVANT TO PLAINTFFS' MOTIONS**

First, Plaintiffs served the Summons and Complaint on both Defendants on January 11, 2022 (Doc. 14). Defendant Garcia asserts that "the Court deemed this service inappropriate." (Doc. 117 at 2.) As the Court is aware, this is simply false, and nothing on the docket supports it. Defendant of course cites nothing in support.

Second, Defendant Garcia asserts that he "received no communications from Plaintiffs, CSAU1 [*sic*] LLC, York County Prison . . . or any other source indicating a lawsuit, confirming lack of actual or constructive notice." (Doc. 117, at 1-2.) Defendant Garcia tells the Court that he "was unaware of the lawsuit until May 1, 2025" (Doc 116, at 3), and that he only "learned of an evidentiary hearing . . . on or about May 1, 2025." (*Id*., at 4.)

Curiously, in light of Garcia's assertion that he had a "lack of awareness" of the existence of this action until May 1, 2025, he does not tell the Court *how* he learned it would hold an evidentiary hearing on damages just three weeks later. (*Id*; *see also*, Doc 117-1, Garcia's sworn Affidavit.)

In fact, the substance of statements which counsel for Defendant York

3

County, Matthew Clayberger made on Garcia's behalf to undersigned counsel show that Defendant Garcia's representations to the Court are indisputably knowingly false and are clearly an attempt to mislead this Court. Specifically, in July 2022, Mr. Clayberger called undersigned counsel by telephone and in that call stated to undersigned counsel that he was calling on behalf of Defendant Joseph Garcia. Mr. Clayberger further stated to undersigned counsel that he had spoken with Mr. Garcia and that Mr. Garcia was aware of this litigation. Mr. Clayberger stated to undersigned counsel that he was requesting an extension to allow Mr. Garcia additional time to respond to Plaintiffs' Request for Entry of Default, filed July 18, 2022. (*See*, Declaration of Alan Denenberg ("Denenberg Decl.", at ¶ 6.)

Further, on August 3, 2022, Defendant CSAU emailed Plaintiffs' counsel, copying counsel for defendant York County, stating that: (1) "we [are] aware of this lawsuit" and requesting "2 [sic] additional weeks for the following reasons," the first of which was "Garcia's father has been ill" and Garcia was "one of" his caretakers; (2) "the legal councils [sic] that we have contacted in some cases can not meet with us for 2 or 3 weeks"; and (3) "we understand . . . service was ruled as 'improper service'." (*See*, "Denenberg Decl.", Exh. A, at 1.) Undersigned counsel responded the same day, requesting that "counsel be retained as quickly as possible to discuss a Stipulation for an extension to file an answer to the Complaint." (*Id*., Exh. A, at 2.) The undersigned also responded that "there has

never been any ruling that service was improper," forwarded a copy of the docket, and stated that "I have already filed a Motion for Default." (*Id.*)  Defendant did not respond further, or retain counsel to appear in this action, or attempt to further discuss a Stipulation for an extension of time to answer the Complaint.

Next, Defendant asserts that he "had no formal role in Defendant CSAU1" [*sic*] and was "not an owner, partner, employee or agent." (Doc. 117, at 3.)[1] He offers nothing to support this assertion other than a purely conclusory affidavit that contains no facts. (*Id.*, at 5, ¶ 1.)  However, and in fact, on January 3, 2022, Garcia executed a contract with York County "on behalf of CSAU" (*See* Denenberg Decl., Exh. B, at 4) and executed an Affidavit on January 3, 2022 related to that contract "Individually and as Agent for CSAU".  (*Id*, at Exh. B, pp 8-9.)  The contract which Garcia executed with York County was produced by the County in this action.  (*Id.*)

In support of his Rule 12(b) Motion to Dismiss, Defendant improperly and generally denies the allegations of the Complaint.  Defendant alludes to a "report" that supposedly memorializes a "comprehensive investigation" which he alleges was conducted by settling Defendant York County.  Defendant does not attach the alleged "report" to his motion.  Defendant does allege, again falsely, that the report

---

[1] The defendant entity named in the First Amended Complaint is CSAU LLC, not CSAU1 LLC.  (Doc. 19, at 1.)

is "on file with Plaintiffs" (Doc, 116, at 3) and "on file with Court." (Doc. 117-1).

Defendant tells the Court that this supposedly comprehensive "report" was

authored on March 31, 2021, the same day on which Garcia and CSAU conducted

a mock execution of Plaintiffs and other prisoners, and that it "clears Defendant of

all allegations." (Doc. 116, at 3; Doc. 72, FAC, at ¶ 72.)

Again, Defendant's representations to the Court concerning the alleged

"report" are demonstrably false. Specifically, Defendant tells the Court that the

supposed investigation and report regarding the events of March 31, 2022 "found

all inmate complaints, including Plaintiffs', to be without merit." (Doc 117, at 4.)

In fact, Plaintiff Schwenk did not even file his Initial Grievance concerning those

events until April 1, 2022, after the alleged one-day "comprehensive investigation"

and "report" were supposedly completed. Denenberg Decl., Ex. C, at 1.

Finally as to Defendants' factual assertions, in support of his motion to

vacate, Defendant tells the Court that, "[a]gainst medical advice, he checked out of

the hospital to appear at the [May 21, 2025] hearing." (Doc. 117, at 4.) Yet again,

Defendant's representations to the Court concerning his alleged "hospitalization,"

and the "diligence" he showed by attending the May 21, 2025 hearing are

demonstrably false. Defendant's medical records, which he included as an exhibit

to his motion, show that contrary to his representation, he was not hospitalized. In

documented fact, he visited an emergency room, was seen for a "Shoulder

6

Dislocation, Reduced" and discharged with instructions to "[c]all your primary
care doctor to arrange follow-up with them or with orthopedics within the next
week." (Doc. 117-2, at 8.)  There are no admission records, and there is no form
related to discharge against medical advice.  Nothing in Defendant's exhibit
supports his representation to the Court that he was admitted to and "checked out"
of a hospital "against medical advice" in order to attend the May 21, 2025
evidentiary hearing.  Instead, his exhibit indicates strongly that he is deliberately
and repeatedly lying to the Court.

    Finally, the Court observed in its June 10, 2025 Order denying entry of
default judgment without prejudice that Defendant may have a meritorious
defense.  The Court observed that the First Amended Complaint does not make it
facially apparent that Plaintiffs exhausted their administrative remedies before
filing this action. (Doc 115, at 2.)  Defendant does not raise this argument in his
Motion to Vacate (Doc. 117, pp. 4-5), but he does briefly allude to it in his Motion
to Dismiss (Doc. 116, p.5.)

    In fact, as evidence previously produced in this litigation shows, Plaintiff
Schwenk did exhaust his administrative remedies, filing an initial grievance on
April 1, 2021 (Denenberg Decl., Ex. C, at 1), and pursuing the process through his
appeal to the York County Board of Commissioners' Solicitor's Office from the
final "determination made by the Deputy Warden on June 8, 2021." (*Id*., Ex. C, at

5-7.)  As to Plaintiff Druck, the Complaint pleads that he filed "at least one

grievance" concerning CSAU, and that it "went unaddressed." (Doc. 19, at ¶ 107.)

## ARGUMENT

### A. Defendant's Motion to Vacate Should Be Denied

In deciding a motion to vacate, the Third Circuit "require[s] the district court

to consider the following factors in exercising its discretion in granting or denying

a motion to set aside a default under Rule 55(c) or a default judgment under Rule

60(b)(1): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has

a meritorious defense; (3) whether the default was the result of the defendant's

culpable conduct." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192,

195 (3d Cir. 1984).  While the Third Circuit has expressed a preference against

default judgments, it has also cautioned trial courts to "weigh the equities of the

situation and the need for the efficacious resolution of controversies." *Feliciano v.

Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656 (3d Cir. 1982).  The district court has

wide discretion in this analysis and must weigh the totality of the circumstances.

*Perry v. Commonwealth*, 328 Fed. App'x 785, 787 (3d Cir. 2009); *Hritz v. Woma

Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (no rigid formula or per se rule applies

in weighing equities).

### 1. *Defendant Has No Meritorious Defense*

The showing of a meritorious defense is accomplished when 'allegations of

defendant's answer, if established on trial, would constitute a complete defense to the action'." *$55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d at 244. Defendant's allegations must be specific and not merely "simple denials and conclusory statements." *Id*, 782 F.2d at 195.

Here, Plaintiff Schwenk's exhaustion of remedies prior to filing suit is dispositively demonstrated by evidence previously produced in this case. (*See*, Denenberg Decl., at Exh. C.) Further, "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead." *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) ("Under 1997e(c) failure to exhaust is not a permissible basis for *sua sponte* dismissal.") Where, as here, "failure to exhaust was not apparent from the complaint or other documents before the District Court," dismissal is not appropriate. *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002) (at 292: "Just as the imperative language in the PLRA's exhaustion requirement does not, of itself, act as a jurisdictional bar, neither does the mandatory phrasing determine the burden of pleading"); *see also*, *Pagan v. Morton*, 2025 WL 757478, at *17 (M.D. Pa. Mar. 10, 2025) ("the only way that the amended complaint could be dismissed for the failure to exhaust would be if it was obvious from the face of the amended complaint that [plaintiff] failed to exhaust his administrative remedies.")

9

Here, it is not obvious from the face of the First Amended Complaint that either Plaintiff failed to exhaust his administrative remedies. The FAC pleads that Druck filed at least one grievance, and that any grievances he filed went unaddressed. (Doc. 19, at ¶ 107.). Although the FAC does not have similar allegations regarding Schwenk, evidence already produced in this case demonstrates that Schwenk properly exhausted the grievance process in conformity with the PLRA's stringent requirement. (*See*, Denenberg Decl., at Ex. C..)

Defendant's other allegations regarding a meritorious defense are nothing more than conclusory denials of the FAC's specific allegations. Defendant argues that because his denials and assertions "contradict[ Plaintiffs'] allegations," he has a meritorious defense, (Doc. 117 at 4), but "simple denials and conclusory statements" do not meet Defendant's burden and do not provide grounds for vacatur. *$55,518.05 in U.S. Currency*, 728 F.2d at 195. Defendant does not have a meritorious defense. Accordingly, his motion should be denied.

## 2. *Defendant's Default Resulted From Defendant's Culpable Conduct*

Defendant's default manifestly resulted from Defendant's own culpable conduct. Defendant was properly served and chose to ignore the Summons. Then, after Plaintiffs filed for Entry of Default, Defendant ignored an offer to negotiate a Stipulation in order to extend his time and allow him to answer the Complaint. (*See*, Denenberg Decl., Ex. A, at 1-2.) A Defendant who acts "willfully" or in

"bad faith," i.e., whose "acts [are] intentionally designed to avoid compliance with court notices," has engaged in culpable conduct. *Hritz v. Woma Corp.*, 732 F.2d 1182–83 (3d Cir. 1984). Here, Defendant Garcia's conduct in ignoring the Complaint and ignoring an offer to extend the time in which to answer the Complaint was both willful and in bad faith. Defendant has continued his bad faith conduct on his current motions, in support of which he has made several indisputably and knowingly false statements in an attempt to mislead the Court and so avoid the consequence of failing to appear earlier in this action. This factor thus also weighs substantially against granting Defendant the requested relief.

### 3. *Defendant's Arguments For Vacatur Are Baseless And Should Be Rejected*

Defendant Garcia argues for vacatur on the grounds of improper service, excusable neglect, and lack of personal jurisdiction, (Doc. 117, at 1), each of which is addressed below.

As to <u>service of process</u>, the uncontroverted evidence shows that Defendant was properly served. (*See* Doc. 14: Proof of Service dated January 11, 2022.) "A signed return of service generally creates a rebuttable presumption that service was validly performed." *Babayoff v. Hazlet Manor Associates*, 2023 WL 1813489, at *2 (3d Cir. Feb. 8, 2023) citing *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 514 n.5 (3d Cir. 1971); *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008).

With regard to the completed January 11, 2022 service and the docketed

proof of service, Defendant argues only that "the Court deemed this service inappropriate." (Doc. 117 at 2.)  This is an entirely baseless assertion without any support in the record.  A party seeking to refute the presumption of valid service must present "sufficient evidence that service was not proper" and Defendant has presented none.  *Babayoff*, at \*2, citing *Blair*.

As to <u>excusable neglect</u>, Defendant argues only that he was unaware of this lawsuit until May 1, 2025. (Doc. 117, at 3-4.)  Defendant factual representations in this regard are demonstrably and knowingly false, as shown above.  (*See*, Denenberg Decl., ¶ 7 and Exh. A.)  Defendant in fact has no grounds on which to argue that this neglect was excusable, and his motion to vacate should be denied.

As to <u>personal jurisdiction</u>, as shown above service was perfected and Defendant's fictive arguments in this respect must be rejected.  In addition, the Complaint pleads facts sufficient to establish the minimum contacts requirements of the due process clause and Pennsylvania's long arm statute.  Two inquiries are required in determining whether jurisdiction exists over an out-of-state defendant. "First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir.1998). As Pennsylvania's long-arm statute extends to the limits of due process, 42 Pa. Cons.Stat. § 5322(b), the two tests collapse into a due process

12

inquiry, which in turn that an out-of-state defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here the FAC pleads that Garcia contracted with York County to provide certain services inside the York County Prison. *See*, ¶ 33 (news reports concerning York County contract with Garcia); ¶ 40 (York County paid Garica and CSAU $122,000 in 2020); ¶ 41 (quoting news article: "York County commissioners approve 2-year contract with controversial jail trainer").  In addition, evidence produced by York County shows that Garcia personally executed contracts in and with York County.  These contacts satisfy the minimum contacts test.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (specific jurisdiction over an out-of-state defendant exists where defendant has "purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities" [internal quotes omitted].)

**B. <u>Defendant's Motion to Dismiss Should Be Denied</u>**

In support of his motion to dismiss, Defendant again repeats and chiefly relies on his completely unsupported assertion that service was defective, and on his deliberate, knowing misrepresentation to the Court that he "had no actual notice until May 1, 2025" of this lawsuit. (Doc. 116, at 4.)  Defendant also argues that he

13

is not a State actor (*Id*., at ¶13), that he cannot be liable for intentional torts or negligence under the law of South Carolina (which is irrelevant here) (*Id*., at ¶16), and that the FAC does not link him to any wrongdoing (at ¶ 17),

First, Defendant's contentions and arguments regarding service and notice are addressed above. They are based on the patent fiction that this Court ruled service ineffective, and on Defendant's attempt to mislead the Court. They do not provide a basis for dismissal of the Complaint under Rule 12(b)(5) and Defendant's motion on that basis should be denied.

Second, Defendant's assertion that he cannot be a State actor is legally incorrect and must be rejected. The Complaint alleges that Defendant, acting in concert with municipal officials and under authority conferred upon him by municipal officials, conducted a mock execution with a firing squad using weapons loaded with live ammunition to terrorize a group of prisoners lined up face to the wall inside York County Prison. (Dkt. 19, ¶¶ 85, 86, 90). Where a private defendant acts "'with the help of or in concert with state officials' to deprive plaintiffs of their constitutional rights [] plaintiffs [will] have demonstrated the state action requirement under the Fourteenth Amendment that underlies a § 1983 claim." *Stephens v. Kerrigan*, 122 F.3d 171, 183 (3d Cir. 1997) quoting *McKeesport Hosp. v. Accreditation Council for Graduate Med. Ed.*, 24 F.3d 519, 524 (3d Cir.1994). Defendant's conclusory argument must be rejected and his

14

motion denied.

Third, Defendant's argument that he cannot be liable for State law intentional torts or negligence under the law of South Carolina is a legal *non sequitur*. The conduct and acts complained of here occurred in Pennsylvania and under Pennsylvania's choice of law rules, Pennsylvania law applies to the State law tort claims. *Klein v. Council of Chem. Associations*, 587 F.Supp. 213, 220 (E.D. Pa. 1984) (Pennsylvania choice of law analysis combines "appraisal of the relevant states' policies with respect to the controversy, with the 'significant contacts' analysis".)

Defendant also argues that the conduct complained of remains "unproven," which is equally irrelevant on a motion to dismiss under Rule 12(b)(6), where a complaint's allegations are accepted as true. *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (courts are to "accept the factual allegations in the complaint as true [and] draw all reasonable inferences in favor of the plaintiff").

Finally, Defendant argues that the Complaint does not link him to any wrongdoing. However, the Complaint includes a time-stamped photograph Garcia posted on his Facebook page showing his participation in the March 31, 2021 "exercise" inside the York County Prison. (Doc. 19, FAC, at ¶ 89.) Defendant's characterization of the FAC is thus patently false and his motion should be denied.

15

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs Christopher Lee Schwenk and Keith Druck respectfully request that the Court deny Defendant Joseph Garcia's motions to Dismiss and to Vacate Entry of Default in their entirety.


Respectfully Submitted,


<u>/s/ LETICIA C. CHAVEZ-FREED</u>
LETICIA C. CHAVEZ-FREED, ESQ.
Pennsylvania ID No. 323615
THE CHAVEZ-FREED LAW OFFICE
2600 North Third Street, Second Floor
Harrisburg, PA 17110
(717) 893-5698
leticia@chavez-freedlaw.com

<u>/s/ ALAN E. DENEBERG</u>
ALAN DENENBERG, ESQUIRE
Pennsylvania ID No. 54161
ABRAMSON & DENENBERG, P.C.
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 398-7066
adenenberg@adlawfirm.com